

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-14-2003

# Reefer v. Comm Social Security

Precedential or Non-Precedential: Precedential

Docket 02-2510

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Reefer v. Comm Social Security" (2003). *2003 Decisions*. Paper 588.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/588

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed April 14, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-2510

LAUREL REEFER

v.

*JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY

*(Pursuant to F.R.A.P. 43(c))

Laurel M. Reefer,

Appellant

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 00-cv-00675)
District Judge: Honorable Gustave Diamond

Argued November 20, 2002

Before: BARRY and AMBRO, *Circuit Judges*
ACKERMAN,** *District Judge*

(Opinion filed: April 14, 2003)

** Honorable Harold A. Ackerman, United States District Judge for the
District of New Jersey, sitting by designation.

John G. Burt, Esquire (Argued)
401 Wood Street
Arrott Building
Pittsburgh, PA 15222

    Attorney for Appellant

David F. Chermol, Esquire (Argued)
James A. Winn, Esquire
Mary Beth Buchanan, Esquire
Paul E. Skirtich, Esquire
Social Security Administration
OGC/Region III
P.O. Box 41777
Philadelphia, PA 19101

    Attorneys for Appellee

---

**OPINION OF THE COURT**

---

AMBRO, *Circuit Judge*:

Laurel Reefer appeals a decision discontinuing her Social Security benefits. Because that decision was not supported by substantial evidence, we reverse and remand.

## I.  Background

In 1989, Reefer began receiving Social Security Supplemental Security Income ("SSI") benefits because she suffered disabling hypertension. In March 1997, the Social Security Administration ("SSA") reviewed Reefer's case and issued a notice of disability cessation on the ground that her medical condition had improved to the point that her disability had ceased.[1] Her benefits were discontinued as of May 31, 1997.

---

1. 42 U.S.C. § 423(f)(1) states that a benefit recipient may be deemed ineligible for benefits if it is determined that his or her disability has ceased, when that determination is supported by substantial evidence of medical improvement and the claimant is able to engage in substantial gainful activity. 20 C.F.R. § 416.994(b)(5) provides a seven-step test under which termination-of-benefits inquiries are to be conducted.

Reefer requested reconsideration of the SSA's denial of benefits, alleging continuing disability due to hypertension, anxiety, tiredness, muscle spasms and pain in her left leg, shoulder, arm and hand, chest pains, neck pains and headaches. On reconsideration, the SSA again denied Reefer benefits. She then sought an administrative hearing, which was held on September 10, 1998 before an administrative law judge (the "ALJ"). Reefer appeared *pro se* at the hearing, which lasted only twenty minutes. She testified that she suffered a stroke in 1997 and provided the ALJ with the names of her two treating physicians — Dr. Tuchinda, a cardiologist, and Dr. Tabas, her primary-care physician. She also testified that she was having seizures, for which her neurologist ordered video monitoring. At the conclusion of the hearing, the ALJ said that he would obtain additional medical records and, if necessary, would call for another hearing. The ALJ did obtain some of Reefer's medical records. However, he issued his opinion without the benefit of a second hearing and without requesting testimony from either of Reefer's treating physicians. The record before the ALJ contained no medical report concerning the 1997 stroke.

Between the date of the hearing and the ALJ's decision, Reefer underwent elective surgery in 1999 to remove pressure from her brainstem. Following this surgery, she suffered a second stroke. However, because the ALJ did not request medical records detailing these events, they also were not before him at the time of his decision. Reefer submitted those records both to the District Court and to this Court on appeal.[2]

In his May 26, 1999 decision, the ALJ found that Reefer was not entitled to SSI. First, the ALJ found that Reefer does not suffer from any of the impairments described in 20 C.F.R., Pt. 404, Subpt. P, App. 1, which would make her *per se* disabled. He said that her "hypertension[,] though severe, is well-controlled . . . with only situational episodic

---

2. Because these records were not before the ALJ, the Commissioner argues that we may not consider them in determining whether the ALJ's decision was supported by substantial evidence. *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). We do not consider them for this purpose.

elevation," and that no medical evidence supported her alleged mental and neurological impairments. He also found that Reefer's "activities of daily living are . . . not consistent with an individual experiencing total[ ] disability," and that her "statements concerning her impairments and their impact on her ability to work are not entirely credible." In so finding, the ALJ noted that "[i]n her Daily Activities Questionnaire, the claimant indicated that she can independently care for her personal needs. She cooks, does dishes, dusts, vacuums, and does other housework." The ALJ went on to find that "[a]lthough she indicated on her Fatigue and Pain Questionnaires that both pain and fatigue interfere substantially with her daily activities, this is not supported by her own statements, nor by the objective medical evidence in record." Finally, the ALJ stated that "the claimant retains the residual functional capacity to perform the exertional demands of at least light work, or work which requires maximum lifting of 20 pounds and frequent lifting of up to 10 pounds . . . . The evidence supports a finding that she is able to lift and carry 20 pounds. The claimant has no significant non-exertional limitations which narrow the range of work she can perform, as demonstrated by the objective medical evidence."

In this context, the ALJ concluded that Reefer was capable of returning to her past relevant work as a cleaner. The ALJ also noted that application of Reefer's residual functional capacity to the Medical-Vocational Guidelines set out in 20 C.F.R., Pt. 404, Subpt. P, App. 2, confirmed that there are jobs in the economy she can perform.

Reefer filed a request for review, which the Appeals Council denied. She then filed a complaint in the District Court, which granted summary judgment in favor of the Commissioner. At issue here is whether the ALJ's determinations that Reefer is no longer disabled and can find work in the economy are supported by substantial evidence. Reefer asks that we either (1) reverse the District Court's decision and grant her SSI benefits or (2) remand the claim to the ALJ for additional testimony and related proceedings.

## II.  Jurisdiction and Standard of Review

We have subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Appellate jurisdiction exists under 28 U.S.C. § 1291.

We examine the record to determine whether substantial evidence supported the ALJ's findings. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981). "'Substantial evidence' has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales*, 402 U.S. 398, 401 (1971)). Stated differently, this standard is met if there is sufficient evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951).

The "substantial evidence" standard of review requires that we review the whole record. *Smith*, 637 F.2d at 970 ("Despite the deference to administrative decisions implied by this standard, appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the Secretary's decision is not supported by substantial evidence."). Further, in evaluating whether substantial evidence supports the ALJ's findings, we are mindful that "leniency [should] be shown in establishing the claimant's disability, and that the Secretary's responsibility to rebut it [should] be strictly construed . . . . [D]ue regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted) (quoting *Hess v. Sec'y of Health, Educ. & Welfare*, 497 F.2d 837, 840 (3d Cir. 1974)).

## III.  Discussion

We reverse for two reasons. First, the ALJ did not adequately develop the record, a duty he owed Reefer because she appeared *pro se*. Second, he neglected to explain why he credited some record evidence but rejected

other evidence. In this context, we find that substantial evidence does not support the ALJ's opinion.

## A. The ALJ failed adequately to develop the record.

An ALJ owes a duty to a *pro se* claimant to help him or her develop the administrative record. "When a claimant appears at a hearing without counsel, the ALJ must 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.' " *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985) (quoting *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978)); *Dobrowolsky*, 606 F.2d at 407 (noting that an ALJ must "assume a more active role when the claimant is unrepresented"). *See generally Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995) ("ALJs have a duty to develop a full and fair record in social security cases.").

While we do not prescribe any particular procedures that an ALJ must follow, *see Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 524-25 (1978), we believe that the procedures the ALJ did follow were insufficient to develop the record in this case. *See Miranda v. Sec'y of Health, Educ. & Welfare*, 514 F.2d 996, 998 (1st Cir. 1975) (ALJ's investigation must be "not wholly inadequate under the circumstances."); *see also Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1052 (6th Cir. 1983) (courts determine the adequacy of an ALJ's investigation on a case-by-case basis). The ALJ did not follow up on Reefer's testimony about her 1997 stroke, an occurrence of obvious relevance to this disability determination. Upon finding that the medical records before him did not refer to this stroke, the ALJ had a duty to investigate further. *See Dobrowolsky*, 606 F.2d at 407. For example, he could have requested additional medical records or held another hearing to receive testimony from Reefer's treating physicians about the stroke. The ALJ did not do this and did not even mention Reefer's 1997 stroke in his opinion. While the record is over 700 pages, that it lacks detail about Reefer's stroke makes it "inadequate under the circumstances." *Miranda*, 514 F.2d at 998.

Second, while the ALJ found Reefer's "statements concerning her impairments and their impact on her ability

to work . . . not entirely credible," he had an insufficient basis to make this conclusion. We would ordinarily defer to an ALJ's credibility determination because he or she has the opportunity at a hearing to assess a witness's demeanor. *See, e.g., Atl. Limousine, Inc. v. NLRB*, 243 F.3d 711, 718 (3d Cir. 2001). However, the ALJ posed no questions to Reefer that would enable him to make such a credibility determination. He did not ask her, for example, to describe her pain, her daily activities and limitations, how much she can lift, how far she can walk, how long she can sit or stand without discomfort, or whether she has difficulty concentrating. *Compare Lashley*, 708 F.2d at 1052 (criticizing ALJ when hearing was only 25 minutes long and claimant was "only superficially questioned concerning his daily activities and his physical limitations"). Rather, the ALJ appeared to base his credibility determination on the fact that Reefer's medical records did not explain why she was experiencing the symptoms she described in her responses to questionnaires. By relying solely on those responses, the ALJ was not able to assess Reefer's demeanor in answering those questions, which could have shed additional light on her credibility.

Moreover, Reefer's medical records reflect that she consistently complained to her treating physicians about pain, body tremors leading to stumbling, dizzy spells, nausea, and headaches. Those records also reflect that Reefer underwent a cranial CT scan because she experienced frequent headaches. That scan indicated possible abnormalities. The January 4, 1999 evaluation of Reefer by Dr. Baraff (a neurologist) was inconclusive, but he was unsure whether she might have an intracranial aneurysm, partial seizures, or migraines. Having seen these complaints in the medical record, the ALJ was not at liberty to ignore them. Rather, he had a duty to consider seriously Reefer's subjective complaints of pain and to probe further. *See Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974) ("In addition to objective medical facts and expert medical opinions, the Hearing Examiner must consider the claimant's subjective evidence of pain and disability, as corroborated by family and neighbors; and all of these factors must be viewed against the applicant's age,

educational background and work experience.") (quoting *Mode v. Celebrezze*, 359 F.2d 135, 136 (4th Cir. 1966)).

Finally, while the ALJ did request certain of Reefer's medical records, he did not have before him medical records from 1999 as well as correspondence addressed to one of Reefer's treating physicians. These records discuss the surgery to remove pressure from her brainstem as well as her 1999 stroke. That the ALJ did not arrange with Reefer's treating physicians to receive them suggests that his document request was too narrow in scope. We need not decide whether the ALJ's failure to obtain these 1999 records, without more, provides a reason for remand[3] because we believe that remand is otherwise warranted. *See Dobrowolsky*, 606 F.2d at 408-09 (remanding case to ALJ when Social Security claimant was prejudiced by lack of counsel and ALJ's "narrow view of his role"). On remand, however, the ALJ should obtain these records.

## B. The ALJ failed to explain why he credited some evidence and discredited other evidence.

The ALJ concluded that "the claimant's hypertension has been essentially well-controlled with medication since 1995, with only situational episodic elevation." In so concluding, he insufficiently explained numerous blood pressure readings and treating physicians' comments that suggested otherwise. *See Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Where there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and will vacate or remand a case where such an explanation is not provided."). For example, a blood pressure reading taken on February 8, 1997 was 160/110.

---

3. "[E]vidence first presented to the district court [and not to the ALJ] must not only be new and material but also be supported by a demonstration by claimant of 'good cause for not having incorporated the new evidence into the administrative record.'" *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) (quoting *Szubak v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984), and citing 42 U.S.C. 405(g)). If that standard is met, a reviewing court may remand a case to the ALJ to consider the new evidence. *Id.* We do not consider whether this standard is met because we remand for other reasons.

At that time, a physician commented "[c]ontrol not good" with respect to her hypertension. At the time of an emergency room admission on March 6, 1997, Reefer's pressure was 187/102. On March 24, 1998, her blood pressure was 168/100, and on April 7, 1998, her pressure was 170/100. All these readings are consistent with moderate or severe hypertension. *The Merck Manual of Diagnosis and Therapy* 1633 (Mark H. Beers & Robert Berkow, ed., 17th ed. 1999). The ALJ explained away these readings as merely "situational episodic elevation." He neglected, however, to describe what "situation" caused this elevated blood pressure. This conclusory explanation was especially deficient in light of Reefer's history of hypertension (indeed, the very reason she received SSI benefits beginning in 1989). We therefore do not believe that substantial evidence supports the ALJ's conclusion that Reefer's hypertension is now controlled. To the contrary, these elevated blood pressure readings, considered together with Reefer's medical records as a whole, strongly suggest that her medical condition remained unimproved.

Also, in determining Reefer's residual functional capacity for work, the ALJ did not explain why he chose to credit one medical report over another. *See Fargnoli*, 247 F.3d at 42; *Cotter v. Harris*, 642 F.2d 700, 705-07 (3d Cir. 1981). The ALJ had before him three physicians' reports addressing Reefer's functional limitations. One form, completed by Dr. Stevens on February 8, 1997, states that: (1) Reefer has no physical impairments; (2) she can carry 10 pounds occasionally; (3) she can stand/walk for less than 2 hours; (4) she can sit for less than 6 hours; (5) she can push/pull to an unlimited extent, other than as mentioned in (2) above for carrying; (6) she can climb, balance, stoop, kneel, crouch, and crawl occasionally; (7) she has unlimited ability in the areas of reaching, handling, dexterity, seeing, hearing, and speaking; and (8) she should avoid exposure to moving machinery, temperature extremes, noise, and fumes, odors, and gases. A second form, completed by a state agency physician on March 18, 1997, concluded that Reefer was capable of "medium levels of exertion." He found that she could: (1) occasionally lift and/or carry 50 pounds; (2) frequently lift and/or carry 25

pounds; (3) stand and/or walk 6 hours per day; (4) sit about 6 hours a day; and (5) push/pull to an unlimited extent. Finally, a form completed by Dr. Baraff on January 4, 1999 states that: (1) Reefer's impairment does not affect her ability to lift, carry, sit, stand, walk, see, feel, handle, speak, reach, hear, push, or pull; (2) she can climb, stoop, kneel, balance, crouch, and crawl for up to 1/3 of an eight-hour day; and (3) her impairment limits her ability to work in the vicinity of moving machinery or heights.

Despite these inconsistent evaluations (*e.g.*, Dr. Stevens stated that Reefer could carry 10 pounds only occasionally while the state agency physician stated she could carry 50 pounds occasionally and Dr. Baraff said that her carrying ability was unaffected by her impairment), the ALJ concluded that Reefer "retains the residual functional capacity to perform the exertional demands of at least light work, or work which requires maximum lifting of 20 pounds and frequent lifting of up to 10 pounds . . . . The evidence supports a finding that she is able to lift and carry 20 pounds." In so holding, the ALJ disregarded Dr. Stevens's contrary report without explaining why he did so, thereby ignoring our mandate in *Fargnoli*. Accordingly, remand is required.

## IV.  Conclusion

Because of the deficiencies in the ALJ's determination, the District Court erred in affirming it. The ALJ failed to develop the record adequately in this *pro se* case. In assessing Reefer's residual functional capacity for work, he also failed to explain why he credited certain medical reports and not evidence more favorable to Reefer. We therefore reverse and remand so that the District Court may remand to the ALJ with directions to address these issues. In so doing, the ALJ also should examine records relating to Reefer's 1999 stroke.

A True Copy:
         Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*