

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-12-2004

# Williams v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-4513

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Williams v. Comm Social Security" (2004). *2004 Decisions.* Paper 1098.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1098

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-4513

EYVONNE WILLIAMS,

Appellant

v.

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 02-cv-00777)
District Judge: Honorable Donetta W. Ambrose

Submitted Under Third Circuit LAR 34.1(a)
August 1, 2003

Before: SCIRICA, Chief Judge, RENDELL and AMBRO, Circuit Judges

(Opinion filed January 12, 2004)

OPINION

AMBRO, Circuit Judge

Eyvonne Williams challenges the decision of the Social Security Commissioner

denying her application for disability insurance benefits under Title II of the Social

Security Act. Because substantial evidence supports the denial, we affirm.

BACKGROUND

As the parties are familiar with the background to this case, we keep our description of it brief. In September 1999, Williams filed an application for disability benefits. She was forty-three years old at that time, with a high school education, and past work experience as a bus driver and bus maintenance worker. She alleged disability due to degenerative disc disease of the lumbar spine and seizure/blackout disorder and later added claims of depression/adjustment disorder, temporomandibular joint disorder, and leg pain.

Williams had back surgery for two herniated discs in 1991, and a second back surgery sometime after 1991. An MRI of her back, taken in late 1998, revealed progressive degenerative changes at the L4-5 intervertebral discs, with mild diffuse bulging, but no disc herniation and nothing else remarkable. Williams has a slightly decreased range of motion in the lumbar spine.

She also has a history of seizures, which were probably due to exposure to fumes in the garage where she performed bus maintenance. She received emergency room treatment for seizures in March and November 1998. She takes medication to control the seizures, however, and has not had one since 1998.

Williams sees a psychologist every eight weeks. She had a neuropsychological evaluation in February and March 2001, but the doctor was not able to reach any conclusions with reasonable psychological certainty, at least in part because the MMPI-2

psychological test Williams took showed high "lie" and "fake" scales. Another doctor concluded from a psychological consultative examination performed in May 2001 that Williams should be able to perform all activities of daily living. A third doctor completed a mental assessment form in August 2001. This doctor rated Williams' global assessment functioning at 58, which indicates moderate difficulty in social, occupational or school functioning.

Williams was diagnosed in October 2000 with temporomandibular joint disorder. This disorder causes pain in the jaw and face.

The Administrative Law Judge ("ALJ") found that Williams has severe impairments of degenerative disc disease, seizure disorder, and depression/adjustment disorder. The ALJ further found that Williams can perform light work (lifting no more than 20 pounds occasionally or 10 pounds frequently), can do only simple, routine 1-2 step tasks, cannot do any jobs requiring visual acuity, cannot do any significant bending, pushing, or pulling, can work only on level surfaces and cannot work around hazards such as heights, dangerous machinery, or in an environment containing air pollutants. Based on these limitations, the ALJ found that Williams cannot return to her past work as a bus driver and maintenance worker. A vocational expert testified that an individual with Williams' limitations, age, education, and experience could perform almost three million jobs that exist in the national economy. The ALJ issued an opinion that Williams was not disabled and denied her disability claims.

Williams appealed to the United States District Court for the Western District of

3

Pennsylvania.  On cross-motions for summary judgment, the District Court entered judgment in favor of the Commissioner and against Williams.  Williams timely appealed, and we exercise jurisdiction pursuant to 28 U.S.C. § 1291.

DISCUSSION

Williams raises two issues on appeal.  First, she asserts that the ALJ failed to consider her impairments in combination.  Second, she contends that the ALJ should not have found that her subjective complaints lacked credibility.

We review for substantial evidence the Commissioner's denial of disability benefits; thus, if substantial evidence supports the Commissioner's decision, we must affirm.  *Reefer v. Barnhart* 326 F.3d 376, 379 (2003).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The ALJ's credibility determinations must be based on substantial evidence, but typically they are entitled to deference because of his ability to assess the demeanor of witnesses at the hearing.  *Id*. At 380.

A.    Impairments in Combination

A benefits claimant may be disabled due to the effect of her impairments in combination.  The ALJ must, therefore, consider the claimant's impairments combined. 20 C.F.R. § 404.1523.  In this case, the ALJ did so.  He discussed the medical evidence at length and addressed at each stage of the analysis the import of Williams' "impairments". The ALJ's hypothetical question to the vocational expert included limitations based on each impairment Williams has.  This question therefore took account of Williams'

4

impairments in combination.

Nor do we see any reason to conclude that the ALJ should have considered differently or to a greater degree Williams' combination of impairments. Williams argues that the ALJ should have given greater consideration to the "interrelationship" among her impairments, but she does not explain how this consideration would have differed from the one provided, and we do not understand how it should have. As the Commissioner points out, Williams' treating physician, aware of all Williams' impairments, noted on more than one occasion that she could perform the range of work found by the ALJ. Two state agency physicians reviewed the medical evidence of record and also concluded that Williams could perform at least that range of work. Given this, we cannot conclude that the ALJ failed to take account of the combined effect of Williams' impairments or that for this reason the record lacks substantial evidence to support the non-disability determination. Accordingly, we will not reverse on this ground.

B.    Credibility Finding

The ALJ found that Williams' subjective complaints were not fully credible and that written record evidence indicates that she engages in a greater level of daily activity than she admitted to in her hearing testimony. Williams challenges this finding, arguing that her oral testimony and the written documentation are consistent with each other and with her claim of disability.

Some of the discrepancies pointed out in the ALJ's opinion are not great and might not alone support an adverse credibility determination. For example, Williams testified

5

that she does not grocery shop, but she submitted a written questionnaire stating that she shops "not often" and another questionnaire stating that she does not shop at all. Similarly, Williams testified at the hearing that she has to lie down twice a day for up to an hour at a time due to back pain and dizziness, but in a daily activities questionnaire Williams did not mention that she has to lie down, and in another questionnaire Williams stated that she must lie down only when she is sick or has side effects from medication. This is not strong evidence of a lack of credibility, but more telling is the fact that Williams never mentioned to her treating physicians that her medication was causing her to have to lie down during the day.

The ALJ also referred to other record evidence, which does more to support his finding of incredibility. For instance, Williams told her treating physician that she wants to obtain disability benefits so that she can go to college. Her interest in attending college suggests that she feels capable of doing more than she admitted at the hearing. The ALJ also could rely on the results of the MMPI-2 psychological evaluation, which showed high "lie" and "fake" scales. In addition, two state agency physicians who reviewed the medical evidence of record determined that Williams' subjective complaints were only partially credible when considered in light of the medical evidence.

Considering cumulatively the inconsistencies and the other relevant record evidence, we conclude that substantial evidence supports the ALJ's adverse credibility finding.

CONCLUSION

Substantial evidence of record leads us to conclude that the ALJ appropriately considered in combination the effects of Williams' impairments and found her lacking in credibility.  We therefore affirm.

———————————————————

TO THE CLERK:

Please file the foregoing Opinion.

By the Court,

/s/ Thomas L. Ambro, Circuit Judge

7