

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-17-2007

# Martin v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3477

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Martin v. Comm Social Security" (2007). *2007 Decisions.* Paper 751.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/751

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-3477
_____

SUSAN L. MARTIN,

Appellant,

v.

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 05-cv-2884)
District Judge: Hon. Lowell A. Reed, Jr.

Submitted Under Third Circuit LAR 34.1(a)
June 19, 2007

Before: McKEE, FISHER, and CHAGARES, <u>Circuit Judges</u>.

_____

(Filed: July 17, 2007)

OPINION OF THE COURT

CHAGARES, Circuit Judge.

Appellant Susan L. Martin ("Martin") appeals the decision of the District Court granting summary judgment to the Commissioner and affirming the conclusion that Martin is not eligible for Supplemental Security Income ("SSI") payments under Title XVI of the Social Security Act, 42 U.S.C. § 1381-1383f.[1]  Because the conclusion is supported by substantial evidence, we will affirm.

I.

We write only for the parties, therefore, we assume familiarity with the factual and legal background presented herein.

At the time of the hearing before the Administrative Law Judge ("ALJ"), Martin was fifty-four years old.  The ALJ found that she suffered from low back impairment, obesity,[2] and urinary incontinence, and that these are severe impairments within the meaning of 20 C.F.R. § 404.1520.  However, the ALJ found that Martin's medical impairments did not meet or equal one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 to qualify for a per se finding of disability.  Martin does not dispute the ALJ's medical findings.  The ALJ additionally found that Martin completed tenth grade, and that her prior history of employment included work as a mail tray inspector, an activity assistant, and an aerobics instructor, but that Martin is unable to perform any of

_____

[1] Martin withdrew her application for Disability Insurance Benefits ("DIB"). (App. 14.)  Thus, we deal only with Martin's claim for SSI on appeal.

[2] Ms. Martin is 4' 11" tall and weighed approximately 140 pounds at the hearing.

2

her past relevant work.  Thus, the ALJ found, and Martin does not dispute, that Martin is

closely approaching advanced age, has a limited education, a history of semi-skilled

work, but no transferrable work skills.  Finally, as to her residual functional capacity

("RFC")[3] the ALJ found that Martin retained "the residual functional capacity to perform

light exertional work activity, with the following restrictions:  the option to sit or stand at

will; postural changes performed only occasionally; and be in close proximity to a

restroom."[4]  (App. 19.)  Martin does not dispute this RFC finding.

---

[3] Residual functional capacity is defined as "the most you can still do despite your limitations."  20 C.F.R. § 416.945.

[4] The ALJ discredited some of Martin's testimony as it related to her limitations. (See App. 18; App. 4 n.4.)  For example, the ALJ stated:

> The claimant testified that she could lift and/or carry three to five pounds, stand for 45 to 60 minutes without a break, walk for 20 minutes without a break, and sit for 30 minutes without a break.  She said that the limitations were due to back pain.  She said that she lives alone, is able to drive, and is independent.  She does housework and laundry, cooks, and washes dishes.  She spends time reading and her outdoor activity includes stretching.  She said that she occasionally goes to a movie with friends.
>
> The claimant's statements regarding her daily activities and responsibilities significantly undermine the credibility of her testimony regarding her limitations.  She lives alone, is independent and performs activities of daily living.  Further, her medical treatment has been conservative and she testified that she is no longer taking pain medications.

(App. 18.)

A vocational expert ("VE")[5] testified at the hearing that an individual with Martin's characteristics for age, education, work experience, and RFC with similar limitations could perform at least two jobs in the national economy. Specifically, someone with Martin's limitations could perform "counter clerk photo" and "information clerk travel."[6] The *Dictionary of Occupational Titles* ("DOT"), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, classifies both occupations at the light exertional level with a "specific vocational preparation" ("SVP") of 2. Occupations with an SVP of 2 are unskilled. Both of these occupations are consistent with Martin's need to sit or stand at will, and, as the VE testified, likewise permit ready access to restroom facilities. According to the VE, there are approximately 2,300 jobs locally and 260,000 jobs nationally for counter clerk photo and approximately 1,054 jobs locally and 150,600 nationally for information travel clerk. The VE also testified that Martin's limitations would preclude her from performing 75% of all unskilled sedentary work, which typically demands prolonged sitting.

Despite erosion of the occupational base for both sedentary and light work that Martin could possibly perform, the ALJ concluded that Martin was not disabled at any

---

[5] The terms "vocational expert," VE, and "vocational specialist," VS, are used interchangeably throughout this opinion.

[6] The VE also identified "auto dealership cashier." The Commissioner now concedes that Martin is unable to perform this job and we therefore omit it from our consideration.

time relevant to his decision and therefore not eligible for SSI payments under the Social Security Act. The District Court agreed, concluding that the ALJ applied the correct legal standards and that the record as a whole contained substantial evidence to support the ALJ's findings of fact and conclusions of law.

## II.

We review <u>de novo</u> the District Court's grant of summary judgment in favor of the Commissioner. However, we may reverse only if "the ALJ's findings were not supported by 'substantial evidence.'" <u>Boone v. Barnhart</u>, 353 F.3d 203, 205 (3d Cir. 2004) (internal citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 552 (3d Cir. 2005) (citing <u>Reefer v. Barnhart</u>, 326 F.3d 376, 379 (3d Cir. 2003)).

To determine eligibility for SSI benefits, a five-step process is used.[7] 20 C.F.R. §

---

[7] Pursuant to the regulations, the five steps are as follows:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and

404.1520. The burden of persuasion is on the claimant for the first four steps, but shifts

to the Commissioner at step five. At step five, the Commissioner must prove that

considering Martin's RFC, age, education and past work experience, she can perform

work that exists in significant numbers in the local or national economy.

On appeal, Martin raises a single issue. She argues that the ALJ erred by failing to

follow the adjudicative guidance in Social Security Ruling ("SSR") 83-12, which she

contends requires "equitable consideration of the remaining occupational base"[8] when an

individual's exertional level falls in between two Medical-Vocational Guidelines

("Grids") which direct opposite conclusions.

---

> meets the duration requirement, we will find that you are
> disabled.
>
> (iv) At the fourth step, we consider our assessment of your
> residual functional capacity and your past relevant work. If
> you can still do your past relevant work, we will find that you
> are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of
> your residual functional capacity and your age, education, and
> work experience to see if you can make an adjustment to
> other work. If you can make an adjustment to other work, we
> will find that you are not disabled. If you cannot make an
> adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)

[8] The occupational base is the total number of unskilled jobs available in each exertional category. The light occupational base includes 1400 occupations. The sedentary occupational base includes 200 occupations. Each occupation represents numerous jobs in the national economy. (App. 61a.)

The Grids are "rules" which are used to direct conclusions of "disabled" or "not disabled" based on a claimant's vocational factors (age, education, and work experience) and exertional RFC (sedentary, light, medium, heavy or very heavy). 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(a). When an individual's specific vocational profile does not fully coincide with a grid rule, a disability finding is not "directed"; rather, the grid rules are used as a frame of reference for a disability decision. 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(d). "Where an individual's exertional RFC does not coincide with the definition of any one of the ranges of work as defined in . . . the regulations, the occupational base is affected and may or may not represent a significant number of jobs in terms of the rules directing a conclusion as to disability. The adjudicator will consider the extent of any erosion of the occupational base and access [sic] its significance." SSR 83-12. In Martin's case, Rule 201.10 from the grid applicable to sedentary RFC directs a conclusion of disabled, whereas Rule 202.11 from the grid applicable to light RFC directs a conclusion of not disabled. The ALJ applied Rule 202.11 to arrive at his conclusion that Martin was not disabled. (App. 22) ("Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.11 as a framework for decision-making, there are a significant number of jobs in the national economy that [she] could perform.").

When a claimant's exertional RFC falls between two grid rules, each requiring opposite conclusions, SSR 83-12 provides the following adjudicative guidance:

> 2. If the exertional level falls between two rules which direct

7

opposite conclusions, i.e., "Not disabled" at the higher exertional level and "Disabled" at the lower exertional level, consider as follows:

a. An exertional capacity that is only slightly reduced in terms of the regulatory criteria could indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of "Not disabled."

b. On the other hand, if the exertional capacity is significantly reduced in terms of the regulatory definition, it could indicate little more than the occupational base for the lower rule and could justify a finding of "Disabled."

c. In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, VS assistance is advisable for these types of cases.
. . . .

SPECIAL SITUATIONS
1. Alternate Sitting and Standing

In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)

There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS [vocational specialist] should be consulted to clarify the implications for the occupational base.

SSR 83-12.

SSR 83-12 speaks directly to Martin's particular physical condition. Martin asserts that the ALJ failed to consider the degree to which her diminished exertional capacity would impact her occupational base. Section 2a of SSR 83-12 provides that an exertional capacity that is only slightly reduced likely indicates a sufficient remaining occupational base whereas Section 2b suggests that an exertional capacity that is significantly reduced may "indicate little more than the occupational base for the lower rule and could justify a finding of 'Disabled.'" Finally, in the more difficult situation, where a claimant's impairments are "somewhere in the middle," testimony of a VE is recommended. According to Martin, the ALJ did not consider whether her occupational base had been slightly or significantly reduced. Because Martin can only perform 25% of occupations at the sedentary exertional level and only two occupations out of 1400 were identified at the light exertional level, Martin argues that it would have been more equitable to find her disabled due to the allegedly significant extent of erosion of the light

9

occupational base. Finally, the ALJ did not address Martin's limited ability to perform sedentary work at all.

Faced with Martin's similar arguments, the District Court concluded that "the testimony of the VE provides the equitable considerations which Martin complains is missing. With the testimony of a VE, the ALJ found that although Martin's limitations do not allow her to perform a full range of light work, she is capable of making a successful adjustment to work existing in significant numbers in the national economy. Because Martin's capacity is 'somewhere in the middle' and in any event 'not clear' the ALJ properly abided by the policy of SSR 83-12 by obtaining the testimony of a VE." (App. 3-App. 4.)

SSR 83-12 does not automatically dictate a finding of disability where an individual is limited by a sit/stand option. Rather, SSR 83-12 indicates that a VE should be consulted, and here, one was. The VE identified two unskilled light occupations that Martin could perform and testified that jobs within those occupations existed in the local and national economy. "Work exists in the national economy when there is a significant number of jobs (*in one or more occupations*) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(b) (emphasis added).

We conclude that the Commissioner met her burden at this stage of the analysis to demonstrate the existence of such jobs. Moreover, the ALJ not only correctly followed the directives of SSR 83-12 by eliciting testimony from a VE, but also correctly held that

10

Martin was not disabled based on the fact that work exists that she can do. Id. ("[I]f work that you can do does exist in the national economy, we will determine that you are not disabled."). We have not interpreted SSR 83-12 "to mandate reversal whenever the ALJ does not set out specific findings concerning the erosion of the occupational base if, as here, the ALJ has received the assistance of a VE in considering the more precise question whether there are a significant number of jobs in the economy that the claimant can perform." Boone, 353 F.3d at 210. The VE's testimony provides substantial evidence to support the ALJ's conclusion that Martin is not disabled because there are a significant number of light exertional jobs in the economy which she can perform.

III.

Accordingly, we will affirm the judgment of the District Court in all respects.

11