Magaly SANTINI, Appellant

v.

COMMISSIONER OF SOCIAL SECURITY.

No. 09–4480.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Nov. 9, 2010.

Filed: Jan. 25, 2011.

---

1. Brown's "Motion for a Copy of the Record"    is denied.

**518**

Abraham S. Alter, Esq., James Langton, Esq., Langton & Alter, Rahway, NJ, for Appellant.

Michelle L. Christ, Esq., Peter W. Jewett, Esq., Social Security Administration, Office of General Counsel, New York, NY, for Appellee.

Before: McKEE, Chief Judge, SLOVITER and COWEN, Circuit Judges.

OPINION

COWEN, Circuit Judge.

Magaly Santini appeals from the District Court's order affirming the Commissioner of Social Security's denial of her application for disability insurance benefits. For the following reasons, we will affirm.

I.

Santini was born in 1967. She has worked as a data entry employee. In June 2006, she applied for Social Security Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–433, 1381–1383f, claiming disability based on seizures, sleep apnea, and diabetes. Santini's application was denied both initially and upon reconsideration. She then requested a hearing before an Administrative Law Judge (ALJ).

At the hearing, Santini testified that she suffers from two different types of seizure disorders: first, what she called "epilepsy attacks," during which she loses consciousness, and second, "blackouts," during which she starts babbling. She experiences the first type less than once per month, but the second type four or five times per month. Santini also stated that she has been diagnosed with sleep apnea, for which she uses a CPAP machine at night. She reported that although her headaches had improved since using the CPAP machine, she continues to feel fatigued during the day. Santini also testified that she suffers from diabetes. She explained that her doctor wanted her to take insulin to control the diabetes, but that she was able to bring her blood sugar down to normal levels without it.

The ALJ considered evidence presented by numerous doctors concerning Santini's medical limitations. Among this evidence was a report from Dr. Justin Fernando, a consultative physician who examined Santini in September 2006. Dr. Fernando diagnosed a history of seizures, renal calculus (kidney stone), and obesity. He found that Santini's seizures were of the grand mal type, but relatively infrequent. He stated that Santini was aware of the precautions to take in light of this condi-

tion, such as staying away from heights or wading in water unattended. Dr. Fernando's physical examination revealed that Santini had a normal gait, and could walk on her heels and toes without difficulty; she weighed 287 pounds, her squat was full, and her stance was normal; she had full flexion, extension, lateral flexion and rotary movements of the cervical spine; and she had full range of motion of the hips, knees, and ankles.

The ALJ also considered a report from one of Santini's treating physicians, Dr. Hooshang Sadeghi. Dr. Sadeghi noted that he had treated Santini every three months from July 2002 through January 2007, and diagnosed her with a history of seizure disorder, insomnia, sleep apnea, and obesity. Despite this five-year doctor-patient relationship, when Dr. Sadeghi was asked whether, based on his medical findings, he could provide a medical opinion about Santini's ability to perform work-related activities, he checked the box labeled "No."

The ALJ also considered a Physical Residual Functional Capacity Assessment that had been completed by state agency physician Dr. Stuart From. Dr. From opined that Santini did not suffer from any exertional, postural, manipulative, visual, or communicative limitations, and that she had no environmental limitations except that she should avoid dangerous activities because of her seizure disorder.

After reviewing this as well as other evidence, the ALJ determined that Santini was not disabled within the meaning of the Act and denied benefits. In reaching this conclusion, the ALJ applied the five-step regulatory evaluation process set forth at 20 C.F.R. §§ 404.1520 and 416.920. Specifically, the ALJ found that Santini: (1) had not engaged in substantial gainful activity since her alleged disability onset date; (2) suffered from several severe impairments, namely, seizures, obesity and diabetes; (3) does not have an impairment that meets or is the medical equivalent of the listed impairments; and (4) has the residual functional capacity to perform her past relevant work as an office clerical employee.

Santini sought administrative review, but the Appeals Council denied her request. She then filed an appeal in the United States District Court for the District of New Jersey. *See* 42 U.S.C. § 405(g). By order entered October 14, 2009, the District Court affirmed the Commissioner's decision. This appeal followed.

## II.

The District Court had jurisdiction pursuant to 42 U.S.C. § 405(g), and we have jurisdiction under 28 U.S.C. § 1291. We review the ALJ's decision to "determine whether it is supported by substantial evidence." *Newell v. Comm'r of Soc. Sec.,* 347 F.3d 541, 545 (3d Cir.2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Reefer v. Barnhart,* 326 F.3d 376, 379 (3d Cir.2003) (internal quotation marks and citation omitted.)

## III.

Santini first argues that the ALJ failed to properly consider her obesity according to the policy set forth in Social Security Ruling (SSR) 02–1p, 2000 WL 628049, 67 Fed.Reg. 57859 (Sept. 12, 2002), which instructs adjudicators "to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity" and reminds them to consider "the combined effects of obesity with other impairments"

when making disability determinations. SSR 02–1p, 2000 WL 628049, at *1. A review of the record shows that the ALJ properly considered Santini's obesity; the ALJ acknowledged Santini's obesity at step two, and then determined, at steps three and four, that, even when Santini's seizures, sleep apnea, and diabetes were considered in combination with her obesity, she did not meet or equal the criteria of any of the medical listings, and was able to work. This analysis comports with the policy set forth in Social Security Ruling (SSR) 02–1p. Furthermore, the ALJ's finding is supported by substantial evidence, as Santini failed to provide any medical evidence indicating that her obesity has a significant effect on her functional capacity.

█ Santini next argues that the ALJ failed to engage in a "task by task" comparison between her residual functional capacity and her past work. We disagree. The ALJ determined that Santini had the residual functional capacity to lift and carry up to 50 pounds occasionally, and 25 pounds frequently; to stand, walk, and sit for six hours per eight-hour work-day; and to push and pull arm controls. The ALJ indicated that Santini did not have the capacity, however, to be exposed to heights or dangerous machinery. The ALJ compared Santini's residual functional capacity with the duties required of her in her past relevant work as a clerical employee, and concluded that she was still able to perform those duties. We find that the ALJ's conclusion was supported by substantial evidence, and that his decision provided a sufficiently "clear and satisfactory explication of the basis on which it rest[ed]." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir.1981).

1. *See, e.g., Robinson v. Comm'r of Soc. Sec.,* No. 07–3455, 2009 WL 872030 (D.N.J. March

█ Finally, Santini argues that she was denied a fair hearing because the ALJ, Judge Richard L. De Steno, is biased against her attorney's law firm. While we recognize that certain district courts in this Circuit have questioned Judge De Steno's objectivity in other circumstances,[1] Santini fails to point to any specific evidence of bias here; she does not allege that Judge De Steno was hostile toward her or her attorney at any time during the hearing, nor does she claim that he actually interfered in any way with her ability to present her case. As a result, this argument fails.

We have considered Santini's remaining arguments and conclude that they are without merit. Accordingly, we will affirm the judgment of the District Court.