NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

─────────────

No. 13-3424

─────────────

GARY WILKINSON,
                              Appellant

v.

COMMISSIONER SOCIAL SECURITY

─────────────

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2-13-cv-00439)
District Judge: Honorable Arthur J. Schwab

─────────────

Submitted Under Third Circuit LAR 34.1(a)
March 3, 2014

Before:  McKEE, Chief Judge, AMBRO, and JORDAN, Circuit Judges

(Filed: March 5, 2014)

─────────────

OPINION

─────────────

AMBRO, Circuit Judge

        Gary Wilkinson appeals from the District Court's order affirming a final decision

of the Commissioner of Social Security denying his request for disability insurance

benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act").

## I.   Background

In April 2010, Wilkinson filed applications for DIB and SSI. He alleged that he was disabled due to, *inter alia*, neck, back and knee injuries. In September 2011, the ALJ issued a decision determining that Wilkinson was not "disabled" within the meaning of the Act. The Appeals Council denied Wilkinson's request for review, making the ALJ's decision the final decision of the Commissioner. The District Court affirmed the Commissioner's decision on the ground that the ALJ's conclusion was supported by substantial evidence in the record.

The focus of Wilkinson's appeal is the ALJ's finding with respect to his alleged postural and manipulative limitations. In June 2010, the state agency physician, Dr. Abu N. Ali, M.D., completed a residual functional capacity ("RFC") assessment of Wilkinson.[1] In his RFC report, Dr. Ali found that Wilkinson was limited to a sedentary RFC, but could make "occasional" postural movements (*i.e.*, climb, balance, stoop, kneel, crouch, and crawl). Dr. Ali found that Wilkinson was limited in reaching in any direction with his left upper extremity, but was otherwise free from manipulative limitations. Various other medical evidence in the record contradicted Dr. Ali's conclusions that Wilkinson was subject to some postural and manipulative limitations. For example, treatment reports by Dr. Gopinath Rajupet noted that Wilkinson had good strength in the

---

[1] An individual's residual functional capacity is the most he can do despite limitations from his impairments. 20 C.F.R. §§ 404.1545, 416.945.

legs and arms, deep tendon reflexes that were bilaterally symmetrical and equal, intact hand grip, and no objective sensory or motor loss. Additionally, Wilkinson himself acknowledged that he could prepare simple meals, complete light household chores, drive for short distances, and play computer and video games.

After considering all the evidence, the ALJ found that Wilkinson had the RFC to perform sedentary work that allowed him "to lift up to 10 pounds occasionally and less than 10 pounds frequently" as well as to "sit and stand alternatively at will." A.R. 13. The ALJ noted that, in making this finding, she had "considered all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence" in addition to "opinion evidence." *Id.* The ALJ further stated that she had "evaluated and considered the opinions of State agency medical consultant, Dr. Ali, M.D., . . . and given them significant weight in conjunction with other relevant evidence in rendering this decision." *Id.* The ALJ agreed with Dr. Ali's conclusion that Wilkinson was "capable of sedentary exertion." A.R. 15. The ALJ's RFC, however, did not acknowledge that Wilkinson was subject to any postural or manipulative limitations.

Wilkinson argues on appeal that his case requires a remand because the ALJ accorded Dr. Ali's opinion "significant weight" yet did not adopt the portion of Dr. Ali's opinion finding that Wilkinson had occasional postural and manipulative limitations.

II.    **Discussion**

We uphold the ALJ's findings so long as they are supported by substantial evidence. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003)). It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)).

To determine whether a claimant is disabled under the Act, an ALJ completes a five-step evaluation, considering in sequence whether the claimant: (1) is working at a substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can perform his previous work; and if not, (5) whether the claimant is capable of performing other work. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). This case deals with step five of the evaluation process, which requires the ALJ to determine whether the claimant can perform other work in the national economy. The ALJ satisfies her burden of production at this step when she identifies at least one occupation with a significant number of jobs in the national economy that the claimant can perform. 20 C.F.R. §§ 404.1566(b), 416.966(b). She found that Wilkinson had the RFC to perform sedentary work, but did not expressly identify that he was subject to any postural or manipulative limitations. Relying on this RFC, a vocational expert ("VE") testified that Wilkinson would be able to perform as an order clerk, surveillance system monitor, or ticket checker, and the ALJ ultimately concluded that because Wilkinson was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," he was not disabled. A.R. 17-18.

4

Wilkinson argues that the ALJ presented the VE with a defective hypothetical RFC that was devoid of postural or manipulative limitations and that, as a result, he was wrongly classified as not disabled. Specifically, Wilkinson contends that because the ALJ gave Dr. Ali's opinion "significant" weight, she could not decline to adopt any of Dr. Ali's particular findings without an explanation. As an initial matter, no rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole "significant" weight. On the contrary, the controlling regulations are clear that the RFC finding is a determination expressly reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), 404.1546(c), 416.946(c). Additionally, as the District Court persuasively explained, the ALJ relied on multiple sources in reaching her conclusion, and specifically noted that she gave Dr. Ali's opinions "significant weight *in conjunction with other relevant evidence.*" A.R. 15 (emphasis added). To support her RFC, the ALJ cited to other record evidence that was inconsistent with Dr. Ali's finding of postural limitations, including medical reports that Wilkinson was doing well, had good leg and arm strength, and Wilkinson's own record of his daily activities. *Id.* at 14-16. The ALJ was not required to adopt all of Dr. Ali's opinion solely because she found the opinion as a whole persuasive and, as the District Court correctly noted, it is not our role to "re-weigh the evidence of record and substitute [our] judgment as to whether [Wilkinson] is disabled under the Act for that of the ALJ." Op. at 7-8; *see also Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986).

5

Wilkinson next contends that the ALJ's failure to acknowledge his alleged postural and manipulative limitations is particularly important in light of Social Security Ruling 96-9p ("SSR 96-9p"), which explains that postural and manipulative limitations may erode the sedentary occupational base. *See* SSR 96-9p, 1996 WL 374185 (July 2, 1996). Nothing in SSR 96-9p, however, is contrary to the ALJ's conclusion that Wilkinson is capable of performing sedentary work. For example, while that Ruling states that "[a] complete inability to stoop would significantly erode the unskilled sedentary occupational base," it goes on to note that "restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work." *Id.* Here Dr. Ali found that Wilkinson could occasionally stoop, and so any erosion of his occupational base is minimal.

Wilkinson's argument that SSR 96-9p states that reaching limitations can erode the sedentary occupational base is similarly unsupported by the text of the ruling. SSR 96-9p makes no mention of the effect of reaching limitations on the occupational base; what the ruling says is that "[a]ny *significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base." *Id.* (emphasis in original). While Dr. Ali found that Wilkinson had limited reaching ability with his left upper extremity, he identified no limitations as to Wilkinson's ability to reach with his right upper extremity, or his ability to handle, finger or feel objects with either upper extremity, and so SSR 96-9p does not apply.

6

Finally, we have examined the numerous cases Wilkinson cites in support of his position and conclude that they are not on point. In this context, we affirm.