**Jose L. CASILLAS, Plaintiff**

v.

**Michael J. ASTRUE, Commissioner of Social Security, Defendant.**

**Civil Action No. 08–CV–2576.**

United States District Court, E.D. Pennsylvania.

Oct. 8, 2009.

Jason L. Thompson, Leventhal, Sutton & Gornstein, Trevose, PA, for Plaintiff.

Dina White Griffin, Office of the General Counsel, Eda Giusti, Social Security Administration, Philadelphia, PA, for Defendant.

## MEMORANDUM OPINION

GOLDEN, District Judge.

Plaintiff Jose L. Casillas appeals Defendant Social Security Administration's ("SSA") denial of his application for both disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Magistrate Judge issued a comprehensive 31–page Report and Recommendation ("R & R") upholding the SSA's findings. Plaintiff filed objections to the R & R which are nearly identical to the arguments made before the Magistrate Judge. After careful review of the R & R, Plaintiff's objections, and related briefs, this Court adopts the R & R and affirms the SSA's decision.

## STANDARD OF REVIEW

■ The Court is limited in its judicial review of the Administrative Law Judge's ("ALJ") findings. *See* 42 U.S.C. § 405(g). The Court reviews objections to the Magistrate Judge's R & R *de novo. Gorecki v. Massanari,* 197 F.Supp.2d 154, 157 (M.D.Pa.2001) (citing 28 U.S.C. 636(b)(1)(c)). However, a district court's review of an ALJ's decision is more deferential, *see Fargnoli v. Massanari,* 247 F.3d 34, 38 (3d Cir.2001), because, like Magistrates, district courts are "bound by the ALJ's findings of fact if they are supported by substantial evidence in the record." *Plummer v. Apfel,* 186 F.3d 422, 427 (3d Cir.1999) (citing 42 U.S.C. § 405(g)); *Doak v. Heckler,* 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Reefer v. Barnhart,* 326 F.3d 376, 379 (3d Cir.2003). It is "more than a mere scintilla but ... somewhat less than a preponderance of the evidence." *Rutherford v. Barnhart,* 399 F.3d 546, 552 (3d Cir. 2005). "Stated differently, the standard is met if there is sufficient evidence 'to justify, if the trial were to a jury, a refusal to direct a verdict.'" *Reefer,* 326 F.3d at 379 (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951)).

## ANALYSIS [1]

In his objections to the Magistrate Judge's report, Plaintiff reasserts that the ALJ inappropriately assessed Plaintiff's residual functional capacity ("RFC") by (1) failing to fully incorporate the opinion of the consultative physician regarding Plaintiff's physical limitations, and (2) discounting the opinions of Plaintiff's treating physician and therapist and a consultative psychologist regarding Plaintiff's mental impairments. (Pl.'s Objections at 1, 3). Plaintiff also asserts that the hypothetical question presented to the vocational expert ("VE") was legally insufficient, because it failed to account for the conditions described in the disputed medical opinions. (*Id.* at 6). This Court overrules Plaintiff's objections.

### Physical Limitations RFC Determination

Plaintiff objects that, because the ALJ found the consultative physician's medical source statement to be "reasonably credible" (R. at 26), the ALJ fully adopted the consultative physician's more favorable assessment of Plaintiff's upper extremity

---

**1.** Because the Court writes only for the parties, who are familiar with the facts in this case, it will not provide a summary of the evidence in the record.

limitations and thus should have found that he was disabled. (Pl.'s Objections at 1–2). The Magistrate Judge concluded that Plaintiff overstated the extent to which the ALJ deviated from the recommendations contained within the medical source statement; instead, the Magistrate Judge found that the ALJ used the medical source statement as a "primary baseline" for her RFC determination, in conjunction with other evidence in the record. (R & R at 654). This Court agrees with the Magistrate Judge.

A medical opinion is simply "one piece of evidence to evaluate in formulating the RFC . . . (and) it is not necessarily controlling." *Pollace v. Astrue*, No. 06–5156, 2008 WL 370590, at *5 (E.D.Pa. Feb. 6, 2008); *see also Mays v. Barnhart*, 78 Fed. Appx. 808, 813 (3d Cir.2003). The Magistrate Judge correctly concluded that the Social Security regulations reserve final judgment on a claimant's RFC to the Commissioner—meaning that an ALJ is not required to "transfer the responsibility of making a final RFC determination . . . to the medical expert." (R & R at 655) (citing 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)). The law thus does not require the ALJ to limit her review of evidence to a consultative physician's opinion, even if the opinion is "reasonably credible."

Plaintiff's objection that the ALJ "adopted" but then deviated from the consultative physician's medical source opinion is unpersuasive, and not born out by the ALJ's plain language. (Pl.'s Objections at 2). In her discussion of the medical source statement, the ALJ never indicated an intention to adopt it wholesale, and her description of the medical source statement as "reasonably credible" does not imply otherwise. (R. at 26).

Plaintiff further argues that the ALJ failed to explain what evidence she looked at in deviating from the consultative physician's opinion to determine RFC in Plaintiff's upper extremities. (Pl.'s Objections at 2). The ALJ specifically cited to the results of EMG and nerve conduction studies; Plaintiff's failure to seek treatment for his hand injuries; Plaintiff's sole reliance on Tylenol for pain relief; and Plaintiff's own testimony regarding his ability to lift with his left and right hands. (R. at 25, 26). Both the Commissioner in his brief and the Magistrate Judge in his R & R pointed to this same recitation of evidence by the ALJ, but the Plaintiff characterizes these citations as "post-hoc rationalization." (Objections at 2). Plaintiff presumably means that the ALJ did not in fact use the evidence she cited to evaluate RFC and deviate from the opinion of the consultative physician. This Court simply disagrees with Plaintiff's characterization, which has no basis in the text or logic of the ALJ's opinion. The ALJ cited to specific, substantial evidence to support her conclusion regarding RFC. Plaintiff's Objections are therefore overruled.

### Mental Limitations RFC Determination

■ Plaintiff reasserts that the ALJ improperly discounted the opinions of both the consultative psychologist and Plaintiff's treating physician and therapist in determining the extent of Plaintiff's psychological impairments. (Pl.'s Objections at 3). Although "[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight," when a non-treating physician provides a conflicting opinion, the ALJ retains as the finder of fact the right to choose whom to credit so long as the ALJ does not "reject evidence for no reason or for the wrong reason." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir.2000) (quoting *Plummer*, 186 F.3d at 429 (3d Cir.1999)); *see also* 20 C.F.R. §§ 404.1527,

416.927. Inconsistent and "contradictory medical evidence" provides a basis for the ALJ "to reject a treating physician's opinion outright." *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 355 (3d Cir.2008) (citing *Plummer*, 186 F.3d at 429).[2]

In drawing conclusions regarding the Plaintiff's mental health RFC, the ALJ chose to credit the testimony of a medical expert ("ME"), the "contemporaneous entries in the extensive treatment notes from Juniata Community Mental Health Center" authored by Plaintiff's treating physician and therapist, and the mental RFC assessment completed by a state agency psychologist. (R. at 22, 24–26). The ALJ accorded more weight to this evidence than to the medical source statements provided by Plaintiff's treating mental health providers and the consultative psychologist. Because the statements proffered by Plaintiff's treating physician and therapist and the consultative psychologist were inconsistent with—and at times contradicted by—the contemporaneous treatment notes,

the ALJ had reason to discount the statements, as she explained in her opinion. (*Id.* at 25–26).

It is not within this Court's power to "weigh the evidence or substitute its conclusions for those of the fact-finder," *see Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir.1992) (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir.1984)), "even if the reviewing court would have decided the case differently." *Brunhammer v. Barnhart*, No. 03–423, 2004 WL 1043779, at *6 (D.Del. Apr. 28, 2004) (citing *Monsour Medical Ctr. v. Heckler*, 806 F.2d 1185, 1190–91 (3d Cir.1986)). Despite Plaintiff's request, the Court will not and cannot engage in *de novo* review of the evidence in the record. *See Monsour Medical Ctr.*, 806 F.2d at 1190–91 ("Overall, this test is deferential, and we grant similar deference to agency inferences from facts if those inferences are supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion' ") (internal quotations omitted).

---

2. Plaintiff cites a recent Third Circuit opinion which states: "[T]his Court has 'consistently held that it is improper for an ALJ to credit the testimony of a consulting physician who has not examined the claimant when such testimony conflicts with testimony of the claimant's treating physician.' " *Brownawell*, 554 F.3d at 357 (quoting *Dorf v. Bowen*, 794 F.2d 896, 901 (3d Cir.1986)). Plaintiff contends that the Magistrate Judge's R & R is inconsistent with the demands of Brownawell. (Objections at 5).

In *Brownawell*, the Court reviewed the plaintiff's second denial of disability benefits after the district court had remanded her first denial for a retrial. *Id.* at 354. The ALJ at the second hearing concluded that the plaintiff possessed mild, not severe, migraine symptoms, thereby denying her disability benefits. *Id.* at 356. This conclusion ignored both the opinions of the plaintiff's treating physician *and* the physician's treatment notes in the medical record. *Id.* Despite its limited power of review, the Third Circuit declined to

defer to the ALJ's findings of fact because the record clearly did not contain substantial evidence to support these conclusions. *Id.* Brownawell differs markedly from the case at bar because, here, the ALJ assigned Plaintiff's treating physicians little weight when their medical source statements did not accurately reflect conclusions that might logically be drawn from their treatment notes. (R. at 25–26). Both the Magistrate Judge and this Court are satisfied that the treatment notes provide substantial evidence for the ALJ's conclusion.

Additionally, despite the quotation supplied by Plaintiff regarding the primacy of the opinions of treating physicians, the Third Circuit instructs that an ALJ presented with contradictory medical opinions "may choose whom to credit." See *Morales*, 225 F.3d at 317. SSA regulations acknowledge that the opinions of treating physicians are not entitled to controlling weight if their assessments conflict with the medical record. 20 C.F.R. §§ 404.1527, 416.927.

Substantial evidence in the record, accurately cited, supports the ALJ's reasoning.

### Hypothetical Question to the VE

Finally, Plaintiff reasserts that the hypothetical question presented to the VE failed to fully incorporate the conditions described in the medical source statements regarding Plaintiff's physical limitations, and the conditions described in the discounted medical source statements regarding Plaintiff's mental limitations. Therefore, Plaintiff argues that the question was legally insufficient. (Objections at 6). Plaintiff made identical arguments before the Magistrate Judge. In the interest of judicial economy, this Court will not repeat the Magistrate Judge's thorough discussion.

For the reasons set forth, Plaintiff's Objections are overruled and the Court adopts the Magistrates Judge's Report and Recommendation to affirm the Social Security Administration's finding that Plaintiff is not disabled. An appropriate order has been entered.

### *ORDER*

AND NOW, this 30th day of September, 2009, upon consideration of Plaintiff's Brief and Statement of Issues in Support of His Request for Review (Doc. No. 8), Defendant's Response to Plaintiff's Request for Review (Doc. No. 9), Plaintiff's Reply Brief (Doc. No. 11), and after careful review of the Report and Recommendation of United States Magistrate Judge David R. Strawbridge (Doc. No. 12), Plaintiff's Objections to the Magistrate Judge's Report and Recommendation (Doc. No. 13), Defendant's Response to Plaintiff's Objections (Doc. No. 14), and Plaintiff's Reply to Defendant's Response (Doc. No. 15), it is hereby ORDERED that:

1. Plaintiff's Objections are OVERRULED and Plaintiff's Motion for Summary Judgment (Doc. No. 8) is DENIED;

2. The Report and Recommendation is APPROVED and ADOPTED;

3. The decision of the Commissioner is AFFIRMED; and

4. The Clerk of Court shall mark this case CLOSED for statistical purposes.

An opinion will follow.

### *REPORT AND RECOMMENDATION*

DAVID R. STRAWBRIDGE, United States Magistrate Judge.

This action was brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner" or the "SSA"), following the denial of the application of Jose L. Casillas ("Casillas" or "Plaintiff") for supplemental security income ("SSI") benefits and disability insurance benefits ("DIB") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 301 *et seq.* (the "Act"). Presently before us for Report and Recommendation are Plaintiff's Brief and Statement of Issues in Support of Request for Review (Doc. 8) ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff (Doc. 9) ("Def. Br."), Plaintiff's Reply Brief (Doc. 11) ("Reply") together with the record of the proceedings before the Administrative Law Judge ("ALJ") and the Appeals Council. Plaintiff asks the Court to reverse the decision of the Commissioner and award benefits. (Pl. Br. at 1). In the alternative, he requests that the Court vacate the decision and remand the matter for a new hearing. (Pl. Br. at 1). The Commissioner opposes remand and seeks the entry of an order affirming the decision of the ALJ. (Def. Br. at 10). For the reasons set out below, we **RECOMMEND**

that the decision of the SSA be **AF-FIRMED** and that judgment be entered in its favor.

## I. Procedural History

Casillas protectively filed the application for SSI and DIB benefits that gives rise to this litigation on November 15, 2005. (R. 89). He asserted a disability onset date of January 31, 2004. (R. 89). The record shows that he was born in July 1961 and was 42 years old at the time of his onset date. (Pl. Br. at 3; R. 21). He had a high school education, but was not credited by the ALJ with the ability to read or write the English language. (R. 27). His past relevant work was "as a maintenance man for an apartment complex." (R. 27; see also Pl. Br. at 3).

Plaintiff's application was denied on March 21, 2007. (R. 69–72). He then retained counsel and requested a hearing which was held before ALJ Suanne S. Strauss on November 15, 2007. (R. 73–75). At the hearing, testimony was taken from Casillas, a medical expert ("ME"), Dr. Richard B. Saul, and a vocational expert ("VE"), Daniel Rappucci. (R. 41–66). On December 1, 2007, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled within the meaning of the Act and thus not entitled to benefits. (R. 16). Plaintiff then sought review of the ALJ's decision by the Appeals Council. (R. 14–15). The Council denied his request by its order of March 31, 2008. (R. 6–10). The ALJ's decision then became the final decision of the SSA. (R. 6).

Plaintiff timely filed this civil action seeking judicial review of the decision, asserting that the ALJ improperly discounted the medical opinions of Casillas's treating psychiatrist, Dr. N.G. Castro, his therapist, Mr. Ivan Galarraga, and the consultative psychiatrist, Dr. Daniel A. Schwarz. (Pl. Br. at 7–19). Plaintiff also asserts that the ALJ failed to "incorporate Plaintiff's upper extremity limitations" into her determination of his physical residual functional capacity ("RFC") (Pl. Br. at 19–22) and posed an "incomplete" hypothetical question to the VE (Pl. Br. at 22–26).

## II. Standard of Review

In considering this appeal we must determine whether substantial evidence supports the Commissioner's final decision. 42 U.S.C. § 405(g); *Rutherford v. Barnhart,* 399 F.3d 546, 552 (3d Cir.2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Reefer v. Barnhart,* 326 F.3d 376, 379 (3d Cir.2003). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford,* 399 F.3d at 552. The factual findings of the Commissioner will be accepted as conclusive as long as they are supported by substantial evidence. *Richardson,* 402 U.S. at 390, 91 S.Ct. 1420 (citing 42 U.S.C. § 405(g)); *Rutherford,* 399 F.3d at 552.

## III. The Decision Under Review

The principal issue before the ALJ was whether Casillas was unable to engage in substantial gainful activity due to any medically determinable impairment that has lasted or could be expected to last for a continuous period of not less than 12 months. (R. 19). In undertaking this task, the ALJ followed the familiar five step sequential evaluation process set forth at 20 C.F.R. §§ 404.1520 and 416.920(a). At Step One, she found Casillas had not engaged in substantial gainful activity since his alleged onset date. (R. 20; R. 21, Finding 2). At Step Two, she found that

Casillas suffered from major depression "and the residuals of carpal tunnel surgery on the left wrist," and that these impairments caused significant limitations in Casillas's ability to perform basic work-related activities. (R. 20; R. 21, Finding 3). She also found at Step Two that Casillas's prior history of alcohol abuse was not a severe impairment during the relevant time period. (R. 22, Finding 3). At Step Three, she found Casillas did not have an impairment or combination of impairments that met or equaled the criteria set out in the Listings of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, and specifically found that Plaintiff did not meet the requirements set out in Listing 12.04 pertaining to "Affective Disorders." (R. 20; R. 22–23, Finding 4).

Although the ALJ determined that Casillas did not meet the criteria for the applicable listings at Step Three (R. 22–23), she recognized that his severe impairments caused significant limitations on his ability to perform work-related activities. (R. 20; R. 22). She determined that Casillas retained the ability to "lift and/or carry 10 pounds with his right hand but can lift and/or carry 15 to 20 pounds using his left hand as an assist, has no limits on sitting, standing, and walking, has no limits on dexterity with his dominant right arm, and cannot engage in sustained fine dexterity with his left arm, but gross dexterity is preserved." (R. 26, Finding 5). The ALJ then concluded that Casillas was "limited to performing simple, repetitive work which is as self-paced as possible not involving teams or assembly lines," and retained the RFC to perform the exertional demands "for less than the full range of light work." (R. 26, Finding 5). In reaching this conclusion, the ALJ found that

Plaintiff's claims "concerning the intensity, persistence and limiting effects of" his symptoms were "not entirely credible." [1] (R. 24). She likewise discounted the opinions proffered by Drs. Castro and Schwarz, as well as the therapist, Mr. Galarraga, as being generally inconsistent with other medical evidence contained in the record which she found credible, including Plaintiff's treatment history, medication history, contemporaneous notes from treatment sessions, testimony of Dr. Saul, the medical source statement completed by the consulting physician, Dr. Oung Thain, and the RFC assessment completed by the state agency psychologist, Paul A. Perch, ED.D. (R. 24–26).

With the benefit of testimony from the VE, the ALJ concluded at Step Four that Casillas could not return to perform his past relevant work as a maintenance man, which was at the medium exertional level. (R. 20–21; R. 27, Finding 6). The ALJ concluded at Step Five, however, again with the benefit of testimony from the VE, and considering Casillas's age, educational background, work experience, and RFC, that he was capable of making a successful adjustment to work existing in significant numbers in the national and regional economies, despite his inability to communicate in English. (R. 21; R. 27–28, Finding 10). Accordingly, Casillas was found not to be under a disability within the framework of the Act at any time through the date of the decision. (R. 21; R. 28, Finding 11).

## IV. Discussion

Plaintiff does not specify the particular findings which he disputes. He does, however, contend that the ALJ did not properly weigh the opinions of Drs. Castro and Schwarz and Mr. Galarraga regarding lim-

---

**1.** Plaintiff does not challenge the ALJ's conclusion regarding the weight given to his own statements and testimony.

itations in his mental functioning. While not challenging the ALJ's Step Three finding, Plaintiff argues that he satisfied his Step Four burden of making out a "prima facie case for disability benefits" by showing that he did not retain the RFC to return to his prior work. He points out that the burden then shifts to the Commissioner to demonstrate, at Step Five, that there existed other work in the national economy that he was capable of doing. (Pl. Br. at 5–7). We construe this to be an argument that the ALJ erred with respect to the mental limitations portion of her RFC finding (R. 23–26, Finding 5).

Plaintiff also contends that the ALJ did not incorporate the physical limitations found by Dr. Thain when she concluded that he (Plaintiff) retained the RFC to perform "light" work (R. 23–26, Finding 5), and that the ALJ erroneously relied upon an incomplete hypothetical question posed to the VE leading to an opinion by the VE that Plaintiff was able to return to work. We construe to be an assertion of error at Step Five (R. 27–28, Finding 10). We address each contention in turn.

## A. RFC Determinations

### i. In General

Where the ALJ is satisfied, based on the evidence, that a claimant has a medically-determinable impairment that could reasonably be expected to produce the symptoms alleged (but would not meet or exceed a listing), she must determine the extent to which the claimant's symptoms actually limit his capacity to work. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). The regulations set forth a process by which an ALJ is to consider a claimant's descriptions of his symptoms and assess the extent to which those symptoms can reasonably be accepted as consistent with the objective medical and other evidence of record. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). When evaluating the intensity and persistence of the symptoms, the ALJ is to consider all objective medical evidence [2] including; a claimant's treatment history; statements regarding the location, duration, frequency and intensity of the claimant's symptoms; any precipitating and aggravating factors; measures used to reduce the symptoms; as well as the type, dosage, effectiveness and side effects of medication taken to alleviate those symptoms. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)(3). She must likewise consider any other relevant evidence, including factors concerning functional limitations and restrictions due to the claimant's symptoms, the claimant's work history and his daily activities.

### ii. Treatment of Medical Opinions

Pertinent to a proper RFC determination are medical opinions, or, "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment...." 20 C.F.R. § 404.1527(a)(2). A case should not, however, "be decided in reliance on a medical opinion without some reasonable support for the opinion." SSR 96–2, 61 Fed.Reg. 34490. In determining what weight to give a medical opinion, an ALJ must consider certain factors, including: the examining relationship, the treating relationship, supportability, and consisten-

---

**2.** Objective medical evidence, relevant to an RFC determination, is defined under the pertinent regulations as "evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques," and is deemed to be a "useful indicator" of "the intensity and persistence of [the claimant's] symptoms and the effect those symptoms, such as pain, may have on [the claimant's] ability to work." 20 C.F.R. § 404.1529(c)(2).

cy with the record as a whole. 20 C.F.R. §§ 404.1527(d), 416.927(d).

With respect to treating physicians, an ALJ should normally "accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patients condition over a prolonged period of time." *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir.2008) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir.2000)). An ALJ, however, is required to "consider the medical findings that support a treating physician's opinion that the claimant is disabled," and where a treating physician's opinion "conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit." *Morales*, 225 F.3d at 317. The ALJ cannot, of course, simply "reject evidence for no reason or for the wrong reason" and, when specifically deciding "to reject the treating physician's assessment, [ ] may not 'make speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." *Id.* (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir.1999)).

## B. Evaluation of the ALJ's RFC Determinations

In her decision, the ALJ analyzed in Finding 5 Plaintiff's RFC and noted that Plaintiff asserted that he suffered both mental and physical limitations, and specifically was debilitated "by the combination of the effects of his depression and the residuals of left carpal tunnel surgery."

(R. 24). Upon analysis of each limitation, the ALJ concluded that Plaintiff retained the RFC:

> [T]o perform light work except that he can lift and/or carry only 10 pounds with his right hand but can lift and/or carry 15 to 20 pounds using his left hand as an assist, has no limits on sitting, standing, and walking, has no limits on dexterity with his dominant right arm, cannot engage in sustained fine dexterity with his left hand but gross dexterity is preserved, and can perform simple, repetitive work which is as self-paced as possible not involving teams or assembly lines.... Therefore, [Plaintiff] has the residual functional capacity for less than the full range of light work.

(R. 23, 26). Plaintiff challenges both the mental limitations and the physical limitations aspects of this determination, generally asserting that the ALJ failed to give proper weight to opinions from medical sources. We examine the ALJ's RFC determinations with respect to each limitation, in turn.

### i. Mental Limitations RFC Determination

■ Examining Plaintiff's depression symptoms first, the ALJ discounted his "statements concerning the intensity, persistence and limiting effects of [his] symptoms," as "not entirely credible." (R. 24). In doing so, and in reaching her RFC determination, she primarily credited the "contemporaneous entries in the extensive treatment notes from the Juniata Community Medical Health Center." (*See* R. 24–26).[3] She explained that the treatment entries:

---

3. These records, referred to within the record as Exhibit 14–F, span pages 251–364 of the record. We observe that the first fifteen pages (R. 251–265) are records titled "Psychiatric Note/Medication Log" and were com-

pleted by Dr. Castro. The next 99 pages (R. 266–364) are "Session Notes" completed, with the exception of a single page (R. 345), by Mr. Galarraga. It is the case that the ALJ discounted the ultimate opinions proffered by

[D]eal almost entirely with the claimant's problems in dealing with his daughter. The claimant has repeatedly been described as being alert and oriented with good insight. He has not been suicidal. Many of his problems and symptoms according to those notes and Dr. Saul's testimony result from lack of money, his problems with his daughter, and other family problems. A treatment note dated July 16, 2007 directly addresses this issue by noting that the claimant's mood is better when his relationship with his daughter is good (Exhibit 14–F, page 25). These treatment notes also indicate that the claimant has been coherent and relevant at all times relative to this decision.

(R. 24–25). She also noted that Plaintiff had "not been hospitalized because of his depression and there ha[d] been no evidence of decompensation." (R. 25).

The ALJ also credited the testimony of the ME, Dr. Saul, who testified generally that certain diagnoses indicating that Plaintiff suffered "extreme" and "marked" mental limitations were "out of context" and did not "fit with the record." (R. 22, 24–25; R. 54–55). The ALJ likewise credited the mental RFC assessment completed by the state agency psychologist, Dr. Perch, who determined that Plaintiff "can understand, remember, and carry out simple one and two step instructions and can perform simple, one to two step routine tasks." (R. 26; R. 183–85). The ALJ concluded that that assessment was "credible, especially in light of the credible testimony provided by Dr. Saul." (R. 26). Ultimately, upon consideration of that "credible evidence with respect to the severity of the claimant's depression," the

ALJ concluded that as a result of his mental limitations, Plaintiff was "limited to performing simple, repetitive work which is as self-paced as possible not involving teams or assembly lines." (R. 26).

In reaching that determination, however, the ALJ discounted the July 17, 2006 medical source statement provided by Dr. Castro, who conducted monthly therapy sessions with Plaintiff from June 30, 2005 through November 5, 2007. (R. 25; R. 190–95). In that statement, Dr. Castro diagnosed Plaintiff with Major Depressive Disorder and a "mood disorder due to medical condition." (R. 190). He identified as the "signs and symptoms" of Plaintiff's disorders: poor memory, sleep disturbance, mood disturbance, emotional "lability" [sic], social withdrawal or isolation, decreased energy, anhedonia or pervasive loss of interests, difficulty thinking or concentrating, intrusive recollections of a traumatic experience, generalized persistent anxiety, hostility and irritability. (R. 190–91). He also noted that Plaintiff suffered from "lack of energy, poor concentration, depression, anxiety," and a certain "phobia," [4] which the form characterizes as "clinical findings" demonstrative of "the severity of [Plaintiff's] mental impairment and symptoms." (R. 191).

Dr. Castro completed the form analyzing Plaintiff's ability to perform work-related functions. Within the category of "mental abilities and aptitude to do unskilled work," he indicated that Plaintiff had a "good" ability in three areas of functioning, a "fair" ability in nine areas of functioning, and "poor or none" ability in four areas of functioning.[5] (R. 193). Within the general

---

Dr. Castro and Mr. Galarraga by finding them inconsistent with the contemporaneous treatment notes taken by each treating source.

**4.** We were unable to decipher the specific phobia from the doctor's handwriting.

**5.** The statement defines "good" as "[a]bility to function in this area is limited but satisfac-

category of "mental abilities and aptitudes needed to do semiskilled and skilled work," Dr. Castro indicated that Plaintiff had a "fair" ability in three of the four listed areas of functioning, and "poor or none" in the fourth. (R. 194). Within the category of "mental abilities and aptitudes needed to do particular types of jobs," Dr. Castro indicated that Plaintiff had a "good" ability in three of the five listed areas of functioning, and a "fair" ability and "poor or none" in the fourth and fifth areas. (R. 194). In support of his assessments, Dr. Castro cited "medical/clinical findings" of depression, poor concentration, and anxiety symptoms. (R. 193–94). He also indicated that he anticipated Plaintiff to, on average, be absent from work "[m]ore than three times a month" due to his impairments or treatment for them, and concluded that Plaintiff's prognosis was "guarded." (R. 192–93). In an interrogatory dated October 29, 2007, Dr. Castro offered his opinion that Plaintiff's "pertinent signs and symptoms" had not changed since the July 2006 statement. (R. 206).

Analyzing Dr. Castro's statement, the ALJ discounted the extent of the limitations set out in his findings, particularly those indicating that Plaintiff "had marked restriction of activities of daily living, extreme difficulties in maintaining social functioning, extreme difficulties in main-taining concentration, persistence, or pace," as well as those indicating that Plaintiff "had poor or no ability to maintain socially appropriate behavior." (R. 25). These findings, in the ALJ's opinion, were "not consistent with" the contemporaneous treatment entries of Dr. Castro and Mr. Galarraga, which she found credible and which tended to show that Plaintiff's depression symptoms were substantially a product of his family and economic difficulties. (R. 25). Additionally, on the specific decompensation point, she noted that while Dr. Castro had reported that Plaintiff had suffered "three episodes of decompensation," Dr. Saul concluded that none of the medical records revealed "evidence of *any* episodes of decompensation." (R. 25) (emphasis added). Given these inconsistencies, she assigned Dr. Castro's statement "little weight." (R. 25).

The ALJ similarly discounted the January 19, 2006 medical source statement completed by Mr. Galarraga[6] who conducted weekly therapy sessions with Plaintiff. (R. 25; R. 132–38).[7] In that statement, Mr. Galarraga wrote that Plaintiff suffered "Major Depressive Disorder." (R. 132). He observed that Plaintiff underwent "outpatient mental health services" as treatment for his condition and that Plaintiff's behavior and

---

tory;" defines fair as "[a]bility to function in this area is seriously limited, but not precluded," and "poor or none" as "[n]o useful ability to function in this area." (R. 193).

**6.** The ALJ referred to this statement simply as "another medical source statement dated January 19, 2006 from the Juniata Community Mental Health Center Exhibit (3–F)." (R. 25). She did not expressly note that Mr. Galarraga was the author. We do not view this factor as having an impact upon our analysis of the ALJ's decision, and Plaintiff does not assert otherwise.

**7.** Mr. Galarraga is not a licensed physician or psychologist and, as such, does not qualify as an "acceptable medical source" under the regulations. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a). Nonetheless, as Plaintiff's treating therapist, Mr. Galarraga qualifies as an "other source," and more specifically a "medical source," from whom information "may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06–03, 71 Fed.Reg. 45593, 45594 (citing 20 C.F.R. §§ 404.1513(d), 416.913(d).) This distinction, however, is not relevant to the issues before us.

psychomotor activity were "guarded," his mood and affective expression were "depressed," his concentration was "poor," his information and intelligence were "↓," his remote memory was "fair" but his recent memory was "impaired," his immediate retention and recall were "poor," his insight was "average," and his social judgment was "↓ average." (R. 132–34). He also noted that Plaintiff was incapable "of managing benefits in his [ ] own behalf" and generally demonstrated "no" difficulties in "performing daily activities on a sustained basis," although he had "difficulties [in] paying bills." (R. 134). He also indicated that Plaintiff "has poor concentration" and "attention deficit," and that his prognosis was "guarded." (R. 135).

Mr. Galarraga's statement also contained a form analyzing Plaintiff's ability to perform work-related functions. Within the general category of "ability to understand, remember, and carry out instructions," Mr. Galarraga indicated that Plaintiff suffered "marked" restriction in four of the five listed areas of functioning, and "extreme" restriction in the fifth.[8] (R. 137). Within the general category of "ability to respond appropriately to supervision, co-workers, and work pressures in a work setting," Mr. Galarraga indicated that Plaintiff suffered "marked" restriction in all five of the listed areas of functioning. (R. 137). In support of these assessments, Mr. Galarraga cited his "medical/clinical finding" that Plaintiff "has Major Depressive Disorder." (R. 137). He also indicated that Plaintiff had "[n]o" "other capabilities affected by the impairment," but could

not "manage benefits in his[ ] own best interest." (R. 138). The ALJ found, however, that Mr. Galarraga's statement, like Dr. Castro's, was "not supported and even contradicted by the treatment notes" which she had found credible. (R. 25). As such, she assigned it only "little weight." (R. 25).

The ALJ also discounted the February 10, 2006 medical source statement analyzing Plaintiff's ability to perform work-related functions completed by the consultative psychologist, Dr. Schwarz. (R. 25–26; R. 145–46). In that statement, and within the general category of "ability to understand, remember, and carry out instructions," Dr. Schwarz reported that Plaintiff suffered "marked" restriction in two areas of functioning and "extreme" restriction in the remaining three areas. (R. 145).[9] Within the general category of "ability to respond appropriately to supervision, co-workers, and work pressures in a work setting," Dr. Schwarz noted that Plaintiff suffered "marked" restriction in all five of the listed areas of functioning. (R. 145). In support of these assessments, Dr. Schwarz cited the "mental status exam." (R. 145). He also indicated that Plaintiff had "[n]o" "other capabilities affected by the impairment," but could not "manage benefits in his[ ] own best interest." (R. 146).

Along with the form medical source statement, Dr. Schwarz completed a "medical/psychological evaluation" narrative form in which he diagnosed Plaintiff as

---

**8.** A "marked" restriction is defined as: "[t]here is serious limitation in this area. The ability to function is severely limited but not precluded." (R. 136). An "extreme" restriction is defined as: "[t]here is major limitation in this area. There is no useful ability to function in this area." (R. 136).

**9.** Page 8 of Dr. Schwarz's statement is missing from the record. (*See* R. 144–45). In that the form completed by Dr. Schwarz appears to be the same form completed by Mr. Galarraga, we assume that the missing page contains the definitions of "marked" and "extreme," and assume that those terms are defined in the same way as they were in Mr. Galarraga's form (set out *supra* n. 8).

having "Major Depressive Disorder." (R. 144). He described Plaintiff's mood as "depressed secondary to medical problems, family issues and past abuses from childhood." (R. 143). He also noted that Plaintiff "acknowledged some perceptual disturbances stating, 'I feel someone is calling me and no one [is] there. I hear someone calling and I think it is my daughter on the phone but no one is there.'" (R. 143). Dr. Schwarz described Plaintiff's concentration, information, intelligence, abstract reasoning, immediate retention and recall as in the "borderline range." (R. 143). He also described Plaintiff as having "borderline ability" in understanding, retaining and following instruction, sustaining information and performing simple repetitive tasks, relating to others including fellow workers and supervisors, and in tolerating stress and pressure associated with day-to-day activity. (R. 144).

On the other hand, he described in the narrative form Plaintiff's "[h]istory of family turmoil including past abuses" as a factor in his depression (R. 144, 141), corroborating, in part, the similar indications from the treatment notes (*see supra* at 8–9; *infra* at 17–19), which the ALJ found credible. He also described as "fair" Plaintiff's common sense judgment, remote memory functioning, recent past memory functioning, impulse control, and his insight and degree of awareness and understanding. (R. 143–44). He concluded that Plaintiff's ultimate prognosis was "fair" so

long as he continued his treatment. (R. 144).

As she did with the statements completed by Dr. Castro and Mr. Galarraga, the ALJ found that the statement completed by Dr. Schwarz, who was "not a treating source and performed a one-time consultative examination,"[10] was neither "consistent with the objective findings contained in the treatment notes" which she had found credible, nor with the accompanying narrative report. (R. 25–26). As such, she assigned it "little weight." (R. 25).

Plaintiff asserts that the ALJ's RFC determination was flawed in that she failed to give greater weight to the opinions proffered by Plaintiff's treating sources, Dr. Castro and Mr. Galarraga, and to the opinion of Dr. Schwarz. More specifically, Plaintiff asserts that the ALJ's discounting of these medical opinions was "based on mistakes of fact" and was "not supported by the evidence." (Pl. Br. at 14). In support of this assertion, Plaintiff cites selected contemporaneous treatment entries authored by Dr. Castro and Mr. Galarraga which are arguably supportive of the opinions proffered in their medical source statements. (Pl. Br. at 14–15). Impressively cataloging that favorable evidence, Plaintiff points out that Mr. Galarraga's[11] weekly treatment notes indicate that Plaintiff had a "depressed" mood affect on 54 occasions, an "anxious" mood affect on 33 occasions, a "flat" affect on two occasions, "paranoid" cognition on 81 occasions, "delusional" cognition on two occasions, and was also described in written

---

10. The regulations generally call for greater weight to be assigned to a treating physician than a non-treating physician, and specify that "[g]enerally, the longer a treating source has treated [the claimant] and the more times [the claimant] has been seen by a treating source, the more weight [the SSA] will give to the source's medical opinion." 20 C.F.R. § 404.1527(2).

11. Although Plaintiff ascribes authorship of the weekly treatment notes to Dr. Castro, examination of those notes shows that 98 of the 113 pages were in fact authored by Mr. Galarraga.

notes as having "low energy" on eight occasions, issues with sleep on seven occasions, "irritability" on nine occasions,[12] and "poor concentration" on 24 occasions. (Pl. Br. at 14–15; R. 265–363).[13] These findings, contained within the treatment entries, expressly credited by the ALJ and which formed the ALJ's basis for rejecting the medical source statements submitted by Dr. Castro and Mr. Galarraga, Plaintiff argues, undermine the ALJ's reasoning and in fact demonstrate that the ALJ rejected the statements "for the wrong reason," and that her opinion should therefore be reversed. (Pl. Br. at 15).

We disagree. In crediting the 98 pages of detailed contemporaneous treatment notes authored by Mr. Galarraga (R. 266–363) and the 15 pages authored by Dr. Castro (R. 251–65) as providing a more accurate illustration of the severity of Plaintiff's mental limitations than the conclusions contained within their medical source statements, the ALJ explained that "[m]any of [Plaintiff's] problems and symptoms … result from lack of money, his problems with his daughter, and other family problems." (R. 24). That impression, she noted, was best illustrated by a July 16, 2007 entry in which Mr. Galarraga noted that Plaintiff's "mood is better when his relationship with his daughter is good." (R. 24; R. 274). She also noted that the treatment notes indicated that Plaintiff had "been coherent and relevant at all

times relative to" the claim. (R. 24). Upon independent review of those treatment notes and the other medical evidence of record cited by the ALJ, and notwithstanding the existence of Plaintiff's favorable cited notations, we are satisfied that substantial evidence is contained within the record to support the ALJ's decision.

Every single treatment note from Mr. Galarraga describes Plaintiff's orientation as being both "alert" and "oriented." (R. 266–363). Each treatment note likewise describes Plaintiff as not "suicidal" and not a "danger to others." (R. 266–363). Additionally, the treatment notes describe Plaintiff's appearance as "well groomed" or "clean dress" on 78 occasions (R. 266–69, 273–98, 314, 317–63),[14] his behavior as "cooperative" on 68 occasions (R. 266, 268–77, 279, 283–86, 288–89, 291, 294–313, 315, 329, 335, 338–63), as possessing "good insight" on 66 occasions (R. 295–324, 326–44, 346–58, 360–63), and fail to indicate a "depressed" mood affect on 42 occasions (R. 266, 268–70, 273–84, 286–88, 292–93, 295, 318–21, 323–25, 327–29, 331, 334, 337, 343–44, 346–48, 350, 363). Dr. Castro, likewise, in most sessions described Plaintiff as "coherent" and "relevant" and as having an "appropriate affect." (R. 251–63), and in a July 14, 2005 session stated that Plaintiff was "less depressed and is more comfortable." (R. 265).

---

**12.** Although Plaintiff actually lists 11 entries, we note that R. 291 is listed twice and that no mention of irritability can be found on R. 292.

**13.** Plaintiff also notes that on one occasion, he was assessed by Dr. Schwarz to have a GAF score of 50 (R. 144), a score which, he argues, constitutes "a specific medical finding that [he] was unable to perform competitive work," (Pl. Br. at 15 n. 8) (quoting *Escardille v. Barnhart*, Civ. A. No. 02–2930, 2003 WL 21499999, *6–7, 2003 U.S. Dist. LEXIS 11085, *21–22 (E.D. Pa. June 24, 2003), rejection of which, without further "reasoning or

justification" from the ALJ, constitutes reversible error, *see Escardille*, 2003 WL 21499999 at *6–7, 2003 U.S. Dist. LEXIS 11085 at *21. The only other GAF score in the record, however, is a 55 (R. 126) and, as we proceed to discuss, we find that the ALJ provided sufficient reasoning and justification for her conclusion that Plaintiff was not precluded by his mental limitations from performing less than light work.

**14.** Each of the remaining 20 entries leave the "appearance" category unmarked.

Pertinent to the ALJ's recognition of the impact that family and economic issues had upon Plaintiff's mental status, Mr. Galarraga's session notes describe on 82 occasions either economic difficulties or conflicts with his daughter, mother, or ex-wife as a primary source of Plaintiff's depression (R. 266–68, 270, 272–74, 279–80, 284, 287–91, 293, 295–97, 300–44, 346–63). A May 16, 2007 note in which Mr. Galarraga indicated that Plaintiff was "feeling tense, worries, poor concentration and irritability because he has economic problems, indebtedness and overdue bills that exceed his ability to meet the monthly payments" is illustrative of the sort of comments found in the notes on this point. (R. 280).

Plaintiff's hearing testimony also supports the ALJ's decision on this point:

> I lost my job. I lost my wife. I lost my apartment. I was living with a friend and then my mother. I had a lot of problems. That's why I cannot work. I went through depression. A few weeks ago my daughter tried to kill herself. There's a lot of problems and depression.

(R. 48). Dr. Castro's handwritten session notes from June 30, 2005 through November 5, 2007 focus even more sharply and exclusively upon Plaintiff's family problems, specifically his combative relationship with his daughter and, to a somewhat lesser extent his mother's health and problems with his ex-wife, as primary causes of his depression symptoms. (R. 251–65).

In addition to family and economic problems being cited as causes for Plaintiff's mental health issues, handwritten comments in the session notes also indicate significant improvement in Plaintiff's symptoms over the course of those sessions. On March 22, 2007, Mr. Galarraga noted that Plaintiff "appeared to be more happy" and that there was "no evidence of tearfulness." (R. 286). On March 30, 2007, he remarked that "[i]t was evident within the session that [Plaintiff] has become more relaxed and happy." (R. 285). On April 2, 2007, Mr. Galarraga described Plaintiff's "anxiety symptoms" as merely "moderate." (R. 284). A week later, Plaintiff was described as "more happy within the session." (R. 283). On April 18, 2007, Mr. Galarraga remarked that it "was evident within the session that [Plaintiff] has become relaxed and less agitated." (R. 282). On June 6, 2007, he described Plaintiff as "more relaxed, affective" and noted a "normal level of energy." (R. 278). On June 14, 2007, he described Plaintiff as "more affective, relaxed and smiling." (R. 277). On June 26, 2007, Plaintiff "expressed that he has begun to feel less sad and [ ] experience periods of joy." (R. 276). Mr. Galarraga further noted that Plaintiff's "depression symptoms have diminished considerably" and indicated that "medications [have] improved [Plaintiff's] problems with his depression symptoms," that Plaintiff "appeared to be more relaxed" and, significantly, that there was "no evidence of depression." (R. 276). On July 11, 2007, it was noted that Plaintiff was "more relaxed," that "significant sleep has improved and level of tension has decreased," and that Plaintiff appeared "more relaxed, happy and more affective." (R. 275). On August 13, 2007, although Plaintiff's mood affect was marked as "depressed," the notes indicated that Plaintiff felt "more relaxed," had "normal levels of energy," and that "sleep interference has diminished as the depression has lifted." (R. 271).[15] Finally,

---

**15.** An August 24, 2007 note reflects "no evidence of sadness and depression." (R. 272). At the same time, the note also reflects that Plaintiff's mood affect was marked as "depressed" and also indicated "sadness … and depression symptoms related to economic

on September 21, 2007, Mr. Galarraga noted that Plaintiff "has begun to feel less sad, more happy and relaxed" and that "he can experience periods of joy." (R. 269).

Given the contents of these contemporaneous notes, the ALJ had reason to question the ultimate opinions rendered by Drs. Castro and Schwarz and by Mr. Galarraga regarding the severity of Plaintiff's depression symptoms. This apparently prompted the ALJ to take hearing testimony from Dr. Saul who reviewed the record, including "the new material" submitted (which, by the context of the testimony, appears to be the treatment notes described above). (R. 52–55). Examining the record, Dr. Saul testified:

> So the recent records really are here and now family problems that he discusses with the counselor. He does take medication. There have been no psychiatric hospitalizations, but yet some of the checklists were marked as extreme, which is really out of context with anything in the record.... Most of what [Plaintiff] describes is, you know, he stays home most of the time, no place to go, that kind of thing. Maintaining social functioning I would have to say is in the moderate range. Able to maintain concentration, persistence, and pace, somewhere between the mild and moderate range. Episodes of decompensation—there have been no hospitalizations.

(R. 54–55). In response to specific questions from the ALJ, Dr. Saul testified that the checklists completed by Drs. Castro and Schwarz and Mr. Galarraga assessing Plaintiff's various work-related restrictions as "marked" or "extreme" did not "fit with the record." (R. 55). He also testified

that there was no evidence in the record of Plaintiff suffering *any* episodes of decompensation, let alone the multiple episodes indicated by Dr. Castro. (R. 55).[16]

The ALJ also credited the March 1, 2006 statement completed by Dr. Perch. (R. 26). In that statement, and within the general category of "understanding and memory," Dr. Perch indicated that Plaintiff was "not significantly limited" in two of the listed areas of functioning, and was "markedly limited" in the third. (R. 183). Within the category of "sustained concentration and persistence," Dr. Perch reported that Plaintiff was "not significantly limited" in seven of the listed areas of functioning, and was "markedly limited" in the eighth. (R. 183–84). Within the category of "social interaction," Dr. Perch wrote that Plaintiff was "not significantly limited" in four of the listed areas of functioning, and was only "moderately limited" in the fifth. (R. 184). Within the category of "adaptation," Dr. Perch indicated that Plaintiff was "not significantly limited" in three of the listed areas of functioning, and was only "moderately limited" in the fourth. (R. 183–84). Finally, in the narrative portion of the statement, Dr. Perch reported:

> [Plaintiff's] ability to understand and remember complex or detailed instructions is limited, however, he would be expected to understand and remember simple one and two step instructions. His basic memory processes are intact. He can make simple decisions. He is able to carry out very short and simple instructions. Moreover, he is able to interact appropriately with the general public. He is able to maintain socially appropriate behavior. Additionally, he would be able to make simple decisions. He can function in production oriented jobs re-

problems." (R. 272). We have no explanation for this puzzling inconsistency.

16. We similarly note the absence of any evidence of decompensation within the record.

quiring independent decision-making. He retains the capacity to perform simple, one to two step routine tasks.

(R. 185).[17]

We are satisfied that, contrary to Plaintiff's assertion, the ALJ's reasoning in discounting the ultimate medical opinions proffered by the treating sources and by Dr. Schwarz was not "based on mistakes of fact," but was, rather, based upon other, accurately cited, medical evidence of record, which included contemporaneous treatment notes from the treating sources and opinions from two acceptable medical sources. That reliance was certainly permissible under the regulations. *See* 20 C.F.R. §§ 404.1545(a)(3) (RFC assessed "based on all of the relevant medical and other evidence."). The ALJ's consideration of the inconsistency of the treating source opinions with the medical evidence that she found credible, as well as her subsequent discounting of those treating source opinions, was likewise permissible under the regulations. *See* 20 C.F.R. §§ 404.1527(d)(3)-(4), 416.927(d)(3)-(4) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, .... [t]he better an explanation a source provides for an opinion, .... [and] the more consistent an opinion is with the record as a whole, the more weight [the SSA] will give to that opinion"); *see also Morales*, 225 F.3d at 317 (ALJ may decide to reject treating sources' assessments "on the basis of contradictory medical evidence").

We are likewise satisfied that the ALJ's opinion on this point was, in fact, supported by substantial evidence of record. While the particular evidence within the treatment notes cited by Plaintiff here, if viewed in isolation, might tend to support the conclusions rendered in the medical statements, the inescapable fact is that the treatment notes and the record as a whole provide substantial evidence to support the ALJ's discounting of those conclusions. The question before us is not whether we would have weighed the evidence in the same way or reached the same conclusion as the ALJ. Indeed, it would not be proper for us to engage in the exercise of "weigh[ing] evidence or substitut[ing][our] conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir.1992). The question before us, rather, is whether substantial evidence supports the mental limitations aspect of the RFC determination reached by the ALJ. *Rutherford*, 399 F.3d at 552. We believe that it does.

### ii. Physical Limitations RFC Determination

■ Turning to the symptoms of Plaintiff's physical limitations, specifically his "carpal tunnel surgery residuals," the ALJ reviewed the objective medical evidence of record, including Plaintiff's treatment history with Harris A. Ross, D.O., F.A.O.C.R.M., and found that:

EMG and nerve conduction studies done on June 1, 2004 and September 27, 2006 were reportedly normal (Exhibit 13–F). The claimant takes only Tylenol for the relief of his pain. These findings are not consistent with the severe pain, numbness, and limitation of the left hand alleged by the claimant.... [H]e does not take any strong narcotic anal-

---

17. Plaintiff asserts that "Dr. Perch did not have access to the later-submitted records from Juniata Mental Health Center or Dr. Castro's Medical Source Statement. Therefore, his opinion was based on an incomplete record." (Reply at 8). We do not believe, however, that this factor undermines the ALJ's partial reliance upon Dr. Perch's opinion or serves to demonstrate that the ALJ's opinion was not otherwise supported by substantial evidence. We note that Plaintiff does not assert otherwise.

gesic medications to alleviate any pain. He is not being treated by a hand specialist or a neurologist for his symptoms. He testified that he can lift a gallon of milk with both hands. His main complaint to Dr. Ross was a weak grip. There is no evidence of any reflex sympathetic dystrophy or chronic regional pain syndrome.

(R. 25). The ALJ concluded "that these factors [were] not consistent with the claimant's subjective complaints as to the severity of his impairments." (R. 25).

The ALJ also substantially credited the February 15, 2006 medical source statement completed by Dr. Thain. In that statement, the ALJ observed, "Dr. Thain indicated that the claimant can lift and carry 10 pounds occasionally and had limitations with respect to operating hand controls because of his left wrist." (R 26; R. 147–56). More specifically, Dr. Thain reported in the statement that Plaintiff could lift and carry 2–3 pounds "frequent[ly]" and 10 pounds "occasional[ly]," but with his "[right] hand only." (Pl. Br. at 20; R. 151). Dr. Thain additionally noted that Plaintiff was "limited in [his] upper extremity," specifically his left wrist, in the activities of "pushing and pulling," but indicated that he had "no limitation" in the activities of "sitting," "standing and walking," in any "postural activities," or in any "other physical functions." (R. 151).

The ALJ found this opinion consistent with the "credible" medical evidence of record and with the "credible testimony"

of Dr. Saul, and concluded that it was itself "credible." (R. 26). Upon consideration of Dr. Thain's opinion, the objective medical evidence of record described above, and Plaintiff's own hearing testimony regarding "his ability to lift with his left hand and his right hand when he uses his left hand as an assist," the ALJ concluded that Plaintiff retained the physical RFC to perform "less than the full range of light work," and could:

> [L]ift and/or carry 10 pounds with his right hand but can lift and/or carry 15 to 20 pounds using his left hand as an assist, has no limits on sitting, standing, and walking, has no limits on dexterity with his dominant right arm, cannot engage in sustained fine dexterity with his left arm but gross dexterity is preserved. . . .

(R. 26).

Plaintiff takes issue with the ALJ's physical RFC assessment to the extent that it differs from the statement provided by Dr. Thain. (Pl. Br. at 21). Specifically, Plaintiff argues that by concluding that Plaintiff could lift and carry 10 pounds with his right hand but could lift or carry 15 to 20 pounds if he used his left hand as an assist, and by concluding, in turn, that Plaintiff was capable of performing a "range of light work," the ALJ failed to incorporate Dr. Thain's conclusion limiting Plaintiff to lifting only 2–3 pounds frequently and 10 pounds occasionally with his right hand. (Pl. Br. at 21–22).[18] Plain-

18. That range of lifting ability, Plaintiff asserts, is actually "more consistent with a restricted range of sedentary work, rather than light work." (Pl. Br. at 21 n. 12). We disagree. The regulations define "sedentary work" as work involving "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools" with walking and standing only "required occasionally." 20

C.F.R. § 404.1567(a). "Light work" is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing, or [involving] sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to

tiff concludes that "the opinion that the ALJ found credible and relied on does not support" the ALJ's RFC determination and that there is therefore "no examining physician of record who has indicated that [ ] Casillas could perform activities consistent with the requirements of the range of light work found by the ALJ." (Pl. Br. at 22). These circumstances, according to Plaintiff, demonstrate that the ALJ's conclusion is not supported by substantial evidence and that it should be reversed. (Pl. Br. at 22).

Plaintiff, however, exaggerates the extent to which the ALJ's RFC finding differs from the limitations assessed by Dr. Thain. Rather than failing wholesale "to incorporate the limitations" found by Dr. Thain (Pl. Br. at 21), a fair reading of the ALJ's decision reveals that the ALJ found the opinion to be "reasonably credible," that she used it as the primary baseline for her ultimate RFC determination, and that she only deviated somewhat to account for other objective medical evidence of record which mitigated the extent of the limitations found by Dr. Thain. The ALJ noted

that the objective medical evidence showed that EMG and nerve conduction studies performed on June 1, 2004 (R. 249–50) and again on September 27, 2006 (R. 246–47), yielded "normal" results. (R. 25). The medical evidence also demonstrated that Plaintiff took only Tylenol for his left hand pain rather than "any strong narcotic analgesic medications to alleviate" the pain, and that he failed to seek treatment with a "hand specialist or a neurologist." [19] (R. 25). These circumstances, the ALJ noted, were not consistent with symptoms of severe pain or numbness. (R. 25).

The ALJ also deviated from Dr. Thain's assessment to account for Plaintiff's own hearing testimony. In that testimony, Plaintiff confirmed that Tylenol was the only medication he took for the pain in his hand. (R. 49). The ALJ also accounted for Plaintiff's testimony "that he can lift a gallon of milk with both hands." (R. 25; R. 50 ("Q Do you buy gallons of milk for your home? A Yes. Yeah, but I have to lift with my other hand or hold it with my arms.")).[20]

do substantially all of these activities." 20 C.F.R. § 404.1567(b). In that Plaintiff does not dispute that he has "no limits on sitting, standing and walking," the ALJ properly determined that Plaintiff's work capabilities fell somewhere between "sedentary" and "light" ranges of work, and thus properly characterized Plaintiff's RFC as "less than the full range of light work." (R. 26).

19. We believe the ALJ overstated this point, as Dr. Ross's treatment records, which the ALJ accounted for (see R. 21, 25), demonstrate that Plaintiff, from at least March 1, 2006 through May 8, 2007, received acupuncture treatment for his wrist. (R. 215–45). The ALJ's statement that Plaintiff's "main complaint to Dr. Ross was a weak grip" (R. 25) likewise appears to be overstated. Although the notes indicate that Plaintiff's grip strength was indeed decreased at each session (from anywhere between 25% (R. 220, 229) to 70% (R. 245)), they make apparent that Plaintiff also complained to Dr. Ross about aches,

pains, cramping, etc. in his left hand. (See R. 215–45).

Plaintiff does not assert that these points have any significance, however, and we note that any error here is irrelevant to the outcome in any event, as the ALJ ultimately credited the limitations with respect to Plaintiff's ability to use his left hand, and concluded that Plaintiff could not use his left hand as anything but "an assist." (R. 23). This conclusion is consistent with Dr. Thain's assessment that Plaintiff could lift with his "[right] hand only." (R. 151). Just as importantly, the VE, in response to a question posed by Plaintiff's counsel, testified that Plaintiff would hypothetically retain the ability to work a job in the national economy even if he were a "[o]ne-armed person." (R. 64).

20. We are puzzled by Plaintiff's characterization of the SSA's Response Brief on these points (Def. Br. at 5–6) as an improper "post-hoc rationalization." (Reply at 5 n. 3).

Plaintiff argues, however, that "there is no examining physician of record who has indicated that Mr. Casillas could perform activities consistent with the requirements of the range of light work found by the ALJ" and, therefore, that the ALJ's finding is not supported by substantial evidence. (Pl. Br. at 22) (citing *Doak v. Heckler,* 790 F.2d 26, 29 (3d Cir.1986) and *Carter v. Apfel,* 220 F.Supp.2d 393, 398 (M.D.Pa.2000)). In other words, Plaintiff asserts that because no medical expert proffered the proffered the precise RFC finding found by the ALJ, the ALJ's RFC finding is not supported by substantial evidence.[21]

We disagree. The cases cited by Plaintiff set forth no rule which would require that an ALJ's RFC assessment "can only stand if a medical report explicitly states that Plaintiff could perform activities consistent with" the range of work found in the assessment, and at least one other court within our district has recently rejected such a restrictive proposition. *Pollace v. Astrue,* Civ. A. No. 06–5156, 2008 WL 370590, *4–5, 2008 U.S. Dist. LEXIS 9735, *13–14 (E.D.Pa. Feb. 11, 2008). In *Pollace,* Judge Giles rejected the same argument, propounded by the same attorney relying upon the same cases. *Id.* at *5, 2008 U.S. Dist. LEXIS 9735 at *14. Judge Giles observed that a medical opinion is simply "one piece of evidence to evaluate in formulating the RFC, but is not necessarily controlling." *Id.* (citing 20

C.F.R. §§ 404.1527(d), 416.927(d)). The Third Circuit likewise recently rejected a similar argument in an unpublished opinion. *Mays v. Barnhart,* 78 Fed.Appx. 808, 813 (3d Cir.2003). Plaintiff's argument, taken to its logical end, would effectively transfer the responsibility of making a final RFC determination from the ALJ to the medical expert—and, in turn, directly contravene that portion of the Social Security regulations expressly reserving RFC determinations to the ALJ rather than to any particular medical source. *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) ("final responsibility for deciding [claimant's RFC] is reserved to the Commissioner" rather than medical source); *see also Mays,* 78 Fed.Appx. at 813 (finding under SSA regulations that ALJ is "responsible for making a residual functional capacity determination based on the medical evidence, and he is not required to seek a separate expert medical opinion." (citing 20 C.F.R. §§ 404.1527(e), 404.1546(c))). Like the courts in *Pollace* and *Mays* before us, we decline to accept this proposition.

The Social Security regulations, rather, permit an ALJ to take additional evidence such as medication and treatment utilized, daily activities, and the claimant's own testimony into account. *See* 20 C.F.R. § 404.1545(a)(3) (RFC assessed "based on *all* of the relevant medical and other evidence") (emphasis added); *see also* 20

---

Plaintiff correctly asserts that "an agency's decision is judged solely by reference to the grounds the agency fact-finder invoked" rather than a retroactive rationalization (Reply at 5 n. 3) (citing *NLRB v. Kentucky River Cmty. Care, Inc.,* 532 U.S. 706, 121 S.Ct. 1861, 1871 n. 3, 149 L.Ed.2d 939 (2001)). The SSA's response, however, does nothing more than cite the ALJ's discussion of the medical evidence. In other words, the SSA discusses the agency fact-finder's decision by referencing the grounds invoked by the agency fact-finder.

**21.** In his Reply Brief, Plaintiff also asserts that the record demonstrates "that the ALJ intended to adopt Dr. Thain's assessment." Reply at 4. Plaintiff, taking his own ball and running with it, goes on to argue that "[t]he disconnect between Dr. Thain's opinion, which the ALJ adopted, and her [RFC] finding constitutes reversible error." Reply at 5. As we have discussed, a fair reading of the ALJ's opinion does not demonstrate that she intended to "adopt" it, at least not in full.

C.F.R. §§ 404.1527(d), 404.1529(c). The ALJ properly did so here. We believe the objective medical evidence, coupled with Plaintiff's hearing testimony regarding his pain and his daily activities, constitutes substantial evidence supporting the ALJ's conclusion substantially adopting Dr. Thain's assessment, but finding that Plaintiff, using his left hand "as an assist" (R. 23), could lift slightly more than Dr. Thain had allowed for in his assessment.

## C. Hypothetical Question to the VE

At Steps Four and Five, respectively, an ALJ is required to determine whether a claimant, given his limitations supported by the record, and given his age, education, and work experience, can return to work in his previous occupation, or whether, alternatively, there exist other jobs within the national economy which he could perform. VE's are frequently utilized to assist the ALJ with the analysis at these steps.

When posing a hypothetical question to the VE, the ALJ "must include all of a claimant's impairments," specifically those impairments which are "supported by objective medical findings in the record." *Ramirez v. Barnhart,* 372 F.3d 546, 552 (3d Cir.2004) (quotation omitted). Where the ALJ's hypothetical question fails to "reflect all of a claimant's impairments that are supported by the record," it is legally "deficient and the expert's answer to it cannot be considered substantial evidence." *Id.* (quoting *Chrupcala v. Heckler,* 829 F.2d 1269, 1276 (3d Cir. 1987)). An ALJ is not required, however, to recite within her hypothetical, verbatim, each and every medical finding which she finds supported by the record. *See Ramirez,* 372 F.3d at 552 n. 2 (framing issue not as "whether a hypothetical question to a vocational expert in a Social Security disability case must include a verbatim

recitation of the findings" but, rather, whether "all of a claimant's issues must be adequately conveyed in the hypothetical"); *see also Brewer v. Astrue,* Civ. No. 07–10357, 2007 U.S. Dist. LEXIS 96964, *16 (E.D.Mi. Nov. 19, 2007). An ALJ, rather, is required to "adequately convey" those limitations to the VE. *Ramirez,* 372 F.3d at 554–55. Where the ALJ provides a sufficient hypothetical to the VE, the VE's response to it will generally constitute substantial evidence in support of the ALJ's Step Five conclusion. *See Allen v. Barnhart,* 417 F.3d 396, 407 (3d Cir.2005).

At the hearing, testimony was taken from a VE, Mr. Rappucci. During the examination, the ALJ proffered a hypothetical question to the VE:

> I have an individual of [Plaintiff's] age, education, past relevant work. We presume that he can't speak, read, and write English . . . . who has no limits on sit, stand, walk [sic]. Can lift, carry ten pounds with the right and 15 to 20 using the left as an assist only. No limits on dexterity with the dominant right hand and arm. No sustained fine dexterity with the left. Gross dexterity preserved with the left. Who needs simple, repetitive work as self-paced as possible with no teams or assembly lines. . . . [C]ould that individual do [Plaintiff's] past relevant work? . . . Is there any work that person could do?

(R. 57–58). The VE responded "no" to the first question (R. 58), and the ALJ adopted that answer in her Step Four finding that Plaintiff was "unable to perform any past relevant work." (R. 27, Finding 6). The VE responded "yes," however, to the latter question pertaining to "any work," and testified that in his opinion Plaintiff would be able to perform the work requirements related to the occupations of a "housekeeping cleaner position," a "finish inspector,"

and a "machine tender."[22] (R. 59, 61). The ALJ, in turn, adopted the VE's answers in her Step Five finding and concluded that Plaintiff "has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. 28, Finding 10).

Plaintiff takes issue with the ALJ's finding, asserting that the hypothetical question to the VE omitted certain limitations supported by the record and that the VE's response to it, thus, does not constitute substantial evidence in support of the ALJ's Step Five determination. (Pl. Br. at 22–23). In support, Plaintiff provides two distinct arguments. First, Plaintiff argues that the ALJ erred in failing to incorporate into her question the conclusions in the medical source statements completed by Drs. Castro, Schwarz, and Thain and by Mr. Galarraga, discussed above (*supra* § IV.B.). (Pl. Br. at 23). We have already determined, however, that the ALJ properly discounted the statements completed by Drs. Castro and Schwarz and by Mr Galarraga, and her deviation from the extent of the limitations contained in Dr. Thain's statement. While the ALJ was required to include within her hypothetical all limitations credibly supported by the record, she was, conversely, not required to include those limitations which were not supported by the record. *E.g.*, *Plummer*, 186 F.3d at 431 (hypothetical which omitted claimant's asserted limitations deemed sufficient where substantial evidence supports ALJ's rejection of those limitations). In that the ALJ properly found that the record did not fairly support the extent of the limitations assessed by Drs. Castro, Schwarz, and Thain and by Mr. Galarraga, she was not required to present them in her hypothetical to the VE.

Plaintiff next argues that the ALJ failed to incorporate into her hypothetical question certain limitations that she herself had found to be credibly supported by the record. Specifically, Plaintiff asserts that the ALJ omitted from her hypothetical her findings that Plaintiff "has moderate limitation in social functioning and mild to moderate limitation in maintaining concentration, persistence or pace." (Pl. Br. at 23; R. 22). Relying primarily upon the Third Circuit's decision in *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir.2004), and including an impressive array of caselaw from sister courts within our district, Plaintiff asserts that "a hypothetical question limiting a claimant to simple, repetitive, one-to two-step tasks is not sufficient to encompass a claimant's impairments where the ALJ has found that he or she often suffered from deficiencies in concentration, persistence and pace." (Pl. Br. at 24–25) (quoting *Whack v. Astrue*, Civ. A. No. 06–4917, 2008 WL 509210, *8, 2008 U.S. Dist. LEXIS 14083, *24 (E.D.Pa. Feb. 26, 2008)).

Notwithstanding Plaintiff's recitation of authority, it is clear that the ALJ here did not, as Plaintiff implies, in fact describe, in insufficient terms, Plaintiff's limitations as merely restricting him to "simple, repetitive, one-to-two-step tasks." The ALJ, rather, specified that, in addition to being restricted to "simple, repetitive work," Plaintiff was also restricted to work which was "as self-paced as possible" and to oc-

---

22. The VE also suggested that Plaintiff was able to work as a "cafeteria attendant or a dining room attendant" performing duties such as "bussing tables, cleaning ... [and] things of that nature." (R. 59). The ALJ rejected that occupation, stating that she was not "convinced that somebody with the RFC that [the ALJ] gave could do the bussing of tables.... Because [she thought] that the bus thing that you have to carry is such that you need the grip strength that [she was] not convinced [Plaintiff] could do." (R. 60).

cupations that allowed him to work "with no teams or assembly lines." (R. 58). Taken together, the "simple, repetitive work as self-paced as possible" limitation stated in the hypothetical, we believe, adequately conveyed to the VE the ALJ's finding that Plaintiff suffered mild to moderate limitations in maintaining concentration, persistence or pace. We likewise believe that the ALJ's further restriction, that Plaintiff work "with no teams or assembly lines," adequately conveyed to the VE her finding that Plaintiff suffered moderate limitation in social functioning.

While the ALJ did not recite each medical finding supported by the record, in her hypothetical we are satisfied that she nonetheless adequately conveyed those limitations to the VE. That is what she was required to do. *Ramirez*, 372 F.3d at 554–55. The response given by the VE, therefore, constituted substantial evidence supporting the ALJ's Step Five determination that Plaintiff was capable of performing work existing in the national economy. *E.g., Allen*, 417 F.3d at 407.

## V.  Recommendation

**AND NOW,** this 28th day of April, 2009, upon consideration of Plaintiff's Brief and Statement of Issues in Support of Request for Review (Doc. 8), Defendant's Response to Request for Review of Plaintiff (Doc. 9), Plaintiff's Reply Brief (Doc. 11), and the administrative record as a whole, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that judgment be entered in favor of Defendant.